Esther Hager FRANCIS, Director,
District of Columbia Department
of Public Works, Appellant,

v.

RECYCLING SOLUTIONS,
INC., Appellee.

RECYCLING SOLUTIONS,
INC., Appellant,

v.

Esther Hager FRANCIS, Director,
District of Columbia Department
of Public Works, Appellee.

Nos. 95–CV–576, 95–CV–1063
and 95–CV–1044.

District of Columbia Court of Appeals.

Argued Oct. 25, 1996.

Decided Jan. 30, 1997.

Order Clarifying Decision on
Rehearing June 9, 1997.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles Reischel, Deputy Corporation Counsel, were on the brief (Jo Anne Robinson, Interim Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and James C. McKay, Jr., Asst. Corp. Counsel, on rehearing), for appellant in Nos. 95–CV–576, –1063, and for appellee in No. 95–CV–1044.

Robert L. Duston, Washington, DC, for appellee in Nos. 95–CV–576, –1063, and for appellant in No. 95–CV–1044.

Before FERREN, FARRELL, and REID, Associate Judges.

FERREN, Associate Judge:

Esther H. Francis, in her capacity as Director of the District of Columbia Department of Public Works (DPW), brought suit in the Superior Court to vacate an order of the District of Columbia Contract Appeals Board (CAB). Instead of filing this suit against the CAB, however, Francis sued Recycling Solutions, Inc. (RSI), the prevailing party before the CAB. The trial court dismissed Francis's complaint, concluding that: (a) Francis had no statutory authority or any other basis for standing to bring the suit; (b) Francis improperly named RSI, rather than the CAB, as defendant; and (c) the Superior Court in any event lacked jurisdiction to hear the matter, since it was a "contested case" subject solely to this court's direct review. In a second order, the trial court granted RSI's request for costs and attorney's fees as sanctions under Super.Ct.Civ.R. 11; the trial court has not yet settled on the proper dollar amount. The court declined RSI's additional request for a Rule 11 order awarding lost profits. Francis appealed both the dismissal of the lawsuit and the award of sanctions; RSI appealed the court's refusal to award lost profits.

We conclude that the matter was properly before the Superior Court and that the trial court accordingly erred in ruling this was a contested case subject to this court's direct review. For reasons expressed hereinafter, we affirm dismissal of the lawsuit (No. 95–CV–576) for the substantive reasons the trial court cited. The trial court's Rule 11 decision, however, was not a final order since the dollar amount of the sanctions has not been determined. Nor is it an interlocutory order appealable by statute, or upon certification under Super.Ct.Civ.R. 54(b), or pursuant to the collateral order doctrine, or by exercising our appellate jurisdiction "pendent" to resolution of the appealable order dismissing Francis's complaint. We therefore must dismiss Francis's appeal (No. 95–CV–1063) and RSI's related cross-appeal (No. 95–CV–1044).

## I. Facts and Proceedings

On February 1, 1993, DPW awarded to Eagle Maintenance Services, Inc. (Eagle) a contract to receive, process, and market recyclables and to buy back recyclables from District residents. RSI, an unsuccessful bidder for the contract, filed a timely protest, and on April 15, 1994 the CAB sustained RSI's protest. The CAB declared DPW's contract with Eagle "void," ordered DPW to pay RSI's bid preparation costs, and directed DPW to award the contract to RSI if DPW found RSI to be a responsible contractor after a proper determination.

Instead, on May 13, 1994, DPW Director Francis, acting on behalf of DPW, filed in Superior Court a "Complaint for Review of a Contract Appeals Board Protest Decision." Although asserting that "this civil action is in the nature of a review of agency action, analogous to that provided for by Superior Court Agency Review Rule 1," Francis named RSI, rather than the CAB, as the defendant.[1] In the complaint, however, Francis did not seek relief from RSI; she asked the trial court to vacate the CAB order

---

1. Francis did not use the model form for a petition for agency review. *See* Super.Ct. Agency Rev.R. 1 App. Instead, she used a standard civil complaint form. Nor did Francis serve either

the CAB or Eagle, despite the fact that the rules governing appeals of agency decisions to the Superior Court require notice to all parties to the

as arbitrary, capricious, and in excess of CAB authority.[2]

RSI filed an answer and a motion to dismiss the complaint under Super.Ct.Civ.R. 12(b) on June 3, 1994. In the motion to dismiss, RSI argued that the Superior Court did not have jurisdiction because the matter was a "contested case" directly reviewable in the D.C. Court of Appeals. *See* D.C.Code §§ 1–1509, –1510 (1992 Repl.). RSI also maintained that Francis had no authority or standing to bring the suit, and that Francis should have named the CAB, not RSI, as the defendant. Finally, RSI asked the court to award RSI its costs and attorney's fees as proper sanctions against Francis for filing a suit with no basis in law and/or for a vexatious purpose. *See* Super.Ct.Civ.R. 11. In her opposition to the motion to dismiss, Francis argued that the Superior Court had jurisdiction, that she had authority and standing to sue as the "real party in interest" under Super.Ct.Civ.R. 17, that RSI was the proper defendant, and that the CAB was not a necessary party for proper resolution of the case. Francis further argued that if the court found either that Francis was the improper plaintiff or that the CAB was a necessary party, the correct solution was to join the required parties rather than to dismiss the suit. *See* Super.Ct.Civ.R. 17(a), 19.

On April 18, 1995, the trial court dismissed the complaint. The court made explicit findings that essentially adopted all of RSI's arguments. The trial court also ruled that the CAB was a necessary party under Rule 19 but refused to allow Francis to join the CAB because that would "not remedy the wrongful naming of RSI as the Defendant."

The trial court did not make a Rule 11 determination in the April 18 order but asked the parties to brief the matter. In doing so, RSI asked not only for its costs and attorney's fees but also for the profits lost from the date of the CAB order. Francis opposed both the imposition of sanctions and, in the event of sanctions, any award of lost profits. On July 24, 1995, the trial court imposed sanctions under Rule 11, ordering Francis to pay all costs and attorney's fees associated with bringing the action in Superior Court. The court declined to award RSI lost profits, however, concluding that such an award would not be an appropriate sanction but would amount, instead, to an award of "damages for the Plaintiff's refusal to abide by the CAB order."[3] In imposing sanctions, the trial court explicitly found that a reasonable prefiling inquiry by Francis would have disclosed that the pleading was not well grounded in fact or warranted by existing law or by a good faith argument for the extension of existing law. The trial court further found reason to conclude that Francis had brought the suit for an improper, vexatious purpose. Francis appealed both the order dismissing the case (No. 95–CV–576) and the order imposing sanctions (No. 95–CV–1063). RSI cross-appealed the part of the sanctions order denying RSI lost profits (No. 95–CV–1044).

While these proceedings were taking place, DPW attempted to suspend the recycling program in response to the District's financial crisis. *See generally District of Columbia v. Sierra Club,* 670 A.2d 354 (D.C.1996). On May 15, 1995, DPW cancelled its contract with Eagle and issued a new solicitation for an emergency 120–day contract at no cost to the District. RSI filed a protest with the CAB on May 26, arguing that DPW must award the contract to RSI under the terms of the 1994 CAB order. Instead, DPW awarded the new 120–day emergency contract to Eagle.

On August 25, 1995, the CAB issued an order modifying its first order of April 15, 1994. The CAB ruled that, because of the changed nature of the recycling market and the District's finances, DPW need not make a responsibility determination or award a con-

---

agency proceeding. *See* Super.Ct. Agency Rev.R. 1.

2. Eagle filed a motion to intervene on May 20, 1994. RSI opposed the motion on June 9, 1994. Judge Lopez never ruled on Eagle's motion, however, and Eagle has not attempted to intervene on appeal.

3. The trial court did not, as part of this order, assess a final dollar amount for Francis to pay RSI. Although RSI filed a brief with the trial court detailing its attorney's fees and costs, Francis has not responded to RSI's brief except to request a stay for more time.

tract to RSI. The CAB also denied RSI's request for money damages, but it did partially grant RSI its bid preparation costs. RSI filed an appeal from this second CAB decision.[4] On May 9, 1996, we stayed RSI's appeal of the second CAB order until we decide this case.

## II. Mootness

■ As a preliminary matter, we must determine whether we still have jurisdiction to hear this appeal, given DPW's cancellation of the contract with Eagle at issue here. While not bound by the Article III "case or controversy" requirement, we have adopted that requirement for prudential reasons and will not normally decide questions which have become moot. *See District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 12 (D.C. 1993) (hereinafter *GIA*); *Atchison v. District of Columbia*, 585 A.2d 150, 153 (D.C.1991). For two reasons, however, we conclude that this case remains a live controversy.

First, we have not yet decided the outcome of RSI's appeal from the second CAB order modifying the 1994 CAB order that provides the foundation of the present suit. See *supra* note 4. As long as that case remains unresolved, the matter before us is alive, not moot. At the least, we must determine whether the trial court properly concluded that bid protests argued before the CAB are contested cases, since that determination forms the basis for any jurisdiction we would have over RSI's second appeal.[5]

Second, the Rule 11 sanctions remain a live controversy between the parties. *See, e.g., GIA*, 633 A.2d at 12 (existence of civil contempt sanctions prevents controversy from becoming moot, despite expiration of injunction that was basis for appeal). Because Francis alleges that her suit was improperly dismissed, and that the court's Rule 11 findings that she failed to make the required prefiling inquiry and filed the suit for a vexatious purpose were unfounded, we must examine the validity of the trial court's decision to dismiss the complaint. *See id.*

## III. Subject Matter Jurisdiction

■ The trial court concluded that this proceeding was a "contested case" and that the trial court accordingly lacked subject matter jurisdiction. In doing so, the court relied heavily on *Communication Workers Local 2336 v. District of Columbia Taxicab Commission*, 542 A.2d 1221 (D.C.1988), where we recognized a two-criteria test for a contested case. *See id.* at 1222. First, the agency proceeding must "determine[ ] the legal rights, duties, or privileges of specific parties." *Id.* Second, the proceeding must be an evidentiary, trial-type hearing required by law (other than by the District of Columbia Administrative Procedure Act (DCAPA) itself). *See id* at 1222–23.[6]

The trial court concluded that, because the CAB decision determined RSI's legal rights, it met the first criterion of the *Communication Workers* test. As to the second criterion, however, we expressly held in *Jones &*

---

**4.** *Recycling Solutions, Inc. v. District of Columbia Bd. of Contract Appeals*, No. 95–AA–1026.

**5.** Furthermore, at oral argument, both parties asserted that the disposition of this appeal was relevant to proceedings still before the CAB. Finally, if RSI ultimately proves successful in its appeal from the second CAB order, the issues presented in this case would resurface and require resolution.

**6.** According to DCAPA, D.C.Code §§ 1–1501 to – 1542 (1992 Repl.):

Any person *suffering a legal wrong, or adversely affected or aggrieved*, by an order or decision of the Mayor or an agency in a *contested case*, is entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review.

D.C.Code § 1–1510(a) (emphasis added). DCAPA defines a contested case as:

[A] proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency....

D.C.Code § 1–1502(8). In *Jones & Artis Construction Co. v. District of Columbia Contract Appeals Board*, 549 A.2d 315 (1988), we held that the Council had no authority to expand our jurisdiction, beyond that conferred by Congress, by permitting an appeal of a CAB decision to this court even though the matter is not a "contested case." *See id.* at 318. It is therefore not enough for jurisdiction that the Procurement Practices Act says a CAB decision may be appealed to this court. *See* D.C.Code § 1–1189.5. The matter must be a contested case as well.

*Artis Construction Co. v. District of Columbia Contract Appeals Board,* 549 A.2d 315 (D.C.1988), that a bid protest does not meet the second criterion because a bid protest does not require a trial-type hearing. *See id.* at 318. The trial court was aware of that ruling but noted that, since *Jones & Artis* had been decided, the "CAB [has] amended its rules to provide for a trial-type hearing." The court therefore concluded that the CAB proceeding satisfied the second criterion. The court, however, did not say—and no one contends—that the CAB actually conducted a trial-type hearing.

■ While we noted in *Jones & Artis* that the CAB at the time had not adopted regulations permitting a hearing in a bid protest case, *see id.,* we did not indicate that the presence or absence of such regulations was, or necessarily would be, dispositive. Furthermore, the regulations now in place do not require an evidentiary, trial-type hearing; they merely allow the CAB to hold such a hearing in its discretion. Section 311.1 of the pertinent regulations provides:

> If the Board determines that there is a genuine issue of material fact which cannot be resolved on the written record, the Board *may* order an evidentiary hearing.

36 D.C.Reg. 2715 (1989) (to be codified at 27 DCMR § 311.1) (emphasis added). Under this regulation, therefore, the question whether to hold a hearing is left entirely to the CAB's discretion, reflecting the CAB's general approach to "bid protests." *See, e.g., id.* at 2714 (to be codified at 27 DCMR § 310.1) (conference in bid protest *may* be held at discretion of CAB "upon its own motion or upon the request of the protester, the contracting agency, or any interested party who filed comments on the agency report"). This discretionary approach must be contrasted with the CAB's regulations governing contract "appeals," where the parties have a right to a hearing. *See id.* at

2704 (to be codified at 27 DCMR § 208.1) (parties to appeal may decide either to have an evidentiary hearing or to submit case on the record). The mere possibility of holding a discretionary hearing on a bid protest, therefore, particularly in a case where the CAB has decided not to hold one, does not meet the "required by law" element of the "trial-type hearing" criterion of the *Communication Workers* test for a "contested case." *See Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 756 (D.C.1993) (en banc) (noting that for contested case, hearing must be "compelled" by statute or Constitution).[7]

■ In support of the trial court's ruling, however, RSI argues that we should hold that any time an administrative body adjudicates facts, that adjudication satisfies the "trial-type hearing" requirement. RSI further argues that it has a constitutional due process right to a hearing. We rejected the constitutional argument in *Jones & Artis,* 549 A.2d at 318 (noting that "[t]he statute (and certainly the Constitution) does not require a hearing"), and none of the authorities cited by RSI persuades us to reconsider that conclusion even if we were permitted to do so without en banc approval. *See Network Technical Servs. v. D.C. Data Co.,* 464 A.2d 133, 135 (D.C.1983) (adjudication of bid protest by District of Columbia Contract Review Committee does not satisfy evidentiary hearing requirement for contested case, and Constitution does not require hearing before award and execution of government contract). Nor do we find persuasive RSI's argument that any determination by an adjudicator satisfies the "trial-type hearing" requirement. *See Network Technical Servs.,* 464 A.2d at 135.

Finally, RSI points to developments in federal procurement law that demonstrate an increased willingness by agencies to hold hearings in bid protest cases. *See, e.g.,* 4

---

7. Although *Timus* and *Jones & Artis* make clear that a discretionary hearing will never satisfy the "required by law" criterion, and that a bid protest will therefore never rise to the level of "contested" case, we do not decide today that the regulations that require a hearing on the motion of the parties to an "appeal" before the CAB (as authorized by D.C.Code § 1–1189.4(a) D.C.Code)

automatically create a "contested" case. We note that nothing in § 1–1189.4 itself actually requires a hearing, and that the CAB has removed its own discretion in the matter merely by regulation. *See Jones & Artis,* 549 A.2d at 318 (noting that we *may* have jurisdiction in an "appeal" rather than a "bid protest").

**70**

C.F.R. § 21.7 (1996) (General Accounting Office (GAO) may hold hearings in bid protest cases on own motion or motion of parties). While we have looked to federal practice, and to GAO practice in particular, for guidance in interpreting the District's procurement statute, we have done so only because of the historic relationship between the District and federal procurement agencies and practices. *See Jones & Artis,* 549 A.2d at 322 n. 6 (detailing relationship). Recent federal innovations, therefore, while perhaps informative, can hardly be considered controlling. In any event, the regulations cited by RSI do not require a hearing any more than the CAB's regulations require one.

In sum, we conclude that the CAB's adoption of regulations has not affected our decision in *Jones & Artis.* Bid protests are not contested cases and thus cannot be appealed directly to this court under either D.C.Code § 1–1189.5 or D.C.Code § 1–1510(a). The trial court, therefore, erred in holding that it lacked subject matter jurisdiction to hear this case.

### IV. RSI As Defendant

■ As the trial court noted in its decision, "[i]t is an elementary proposition of law that a plaintiff must sue the proper party or parties as defendant." *Council of Sch. Officers v. Vaughn,* 553 A.2d 1222, 1225 (D.C. 1989). In ascertaining the proper defendant here, we note that, as a general rule, an administrative agency itself must carry the burden of defending its action in any challenge to it. *See, e.g., District of Columbia Dep't of Admin. Servs. v. International Bhd. of Police Officers, Local 445,* 680 A.2d 434, 437 (D.C.1996) ("Even if the rule and proposed form did not make it clear that [plaintiff] should have named as respondent the agency that issued the order, rather than the party that prevailed before the agency, our decision in [*Vaughn*] should have settled the matter."); *Vaughn,* 553 A.2d at 1226 (noting that agency would be proper defendant but for operation of statute that makes D.C. Council proper defendant); *Dankman v. Dis-*

trict of Columbia Bd. of Elections & Ethics, 443 A.2d 507, 516–17 (D.C.1981) (en banc) (opinion of Harris, J.) ("By procedural design, the agency carries the burden of supporting its decision and occupies a defensive role."); 3 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 18.1 (3d ed. 1994). Unless the legislature alters this approach by statute, therefore, the agency is the proper defendant.

■ Francis offers several inventive reasons why she elected to sue RSI instead of the CAB. First, she contends that, because the CAB is a "noncorporate department or other body within a municipal corporation," the CAB is not suable as a separate entity (i.e., is not sui juris). *Braxton v. National Capital Hous. Auth.,* 396 A.2d 215, 216 (D.C. 1978).[8] We cannot credit this argument. We regularly have sustained suits against the CAB, *see, e.g., Fry & Welch Assoc., P.C. v. District of Columbia Contract Appeals Bd.,* 664 A.2d 1230 (D.C.1995); *Abia–Okon v. District of Columbia Appeals Bd.,* 647 A.2d 79 (D.C.1994); *Jones & Artis, supra,* as well as against other adjudicative agencies, *see, e.g., Spielman v. District of Columbia Police & Firefighters' Retirement & Relief Bd.,* 624 A.2d 932 (D.C.1993); *Doe v. District of Columbia Comm'n on Human Rights,* 624 A.2d 440 (D.C.1993); *"N" St. Follies Ltd. Partnership v. District of Columbia Rental Hous. Comm'n,* 622 A.2d 61 (D.C.1993). As a further example that agency adjudicators routinely are considered to be proper respondents, this court's own rule governing review of agency decisions requires the petitioner to name the respondent agency when seeking direct review here; we clearly have rejected the idea that an adjudicating agency is not sui juris for purposes of defending its own decisions. *See* D.C.App.R. 15(c).

■ It is therefore clear that the CAB is a proper defendant in this action. It is equally clear that RSI is not. If a defendant cannot provide the requested relief, the defendant should be dismissed. *See Vaughn,* 553 A.2d

---

8. Francis does not acknowledge the possibility that DPW itself is not sui juris and thus could not itself sue, even through its Director, without statutory authority. *See Nickles v. District of Co-*

lumbia, 628 A.2d 113, 114 (D.C.1993) (citing *Braxton*). We address this difficulty for Francis below in part V.

at 1226. Like the trial court, we question how Francis can expect RSI to vacate the CAB's order, as the complaint seeks. Without the CAB in the case, the best Francis could hope for was an order enjoining RSI from taking advantage of the CAB decision. Francis, however, did not ask for such relief or make any argument as to why RSI should not seek to enforce the CAB order in its favor. Francis, moreover, has not explained what wrong RSI has committed to bring it under judicial scrutiny. Instead, Francis has argued in her complaint only that the CAB was at fault by issuing an arbitrary and capricious order that exceeded its authority. Such charges, directed only against the CAB, not RSI, self-evidently indicate that only the CAB, not RSI, was in a position to address them.

▆ Finally, we reject Francis's argument that RSI was the "real" party in interest. As discussed above, the matters raised in the complaint go directly to the CAB's authority and to the validity of its decision, which the CAB has a substantial interest in defending. We cannot agree with Francis's unsupported assertion that the CAB has no more interest in an appeal of its decision than the Superior Court has in an appeal of a judgment. That statement confuses the role of adjudicative agencies with that of the courts and conflicts with the well established proposition discussed above: that an agency defends its own decisions. *See Dankman,* 443 A.2d at 516–17 (opinion of Harris, J.); *id.* at 524–25 (Ferren, J., concurring).

In sum, we agree with the trial court that Francis improperly named RSI as the defendant in this action. Under a well established rule of administrative law, Francis should have named the CAB as the respondent agency in seeking review of the CAB decision. Francis's reasons for bringing the suit against RSI—that the CAB was not a suable entity and that RSI was the real party in interest—are not persuasive. And, of fundamental importance, RSI cannot provide the relief that Francis has requested. Accord-

ingly, we sustain the trial court's ruling that Francis improperly named RSI as defendant in this case.

## V. Francis As Plaintiff

We also agree with the trial court that Francis lacked statutory authority, or any other basis for standing, to file a suit to dislodge the CAB order.

▆ As Francis herself has noted, a noncorporate department within a municipal corporation is not sui juris. *See Braxton,* 396 A.2d at 216. Not long ago we intimated in *Nickles v. District of Columbia,* 628 A.2d 113, 114 (D.C.1993)—and hereby confirm— that DPW is not sui juris. Francis, therefore, cannot sue on DPW's behalf unless DPW itself has statutory authority to sue.[9]

### A. *The Procurement Practices Act*

▆ Francis begins, properly, with the Procurement Practices Act, D.C.Code §§ 1–1181.1 to –1192.6. She points specifically to § 1–1189.5(b), which provides in part:

> If the Director [of the Department of Administrative Services (DAS)] determines that an appeal should be taken, the Director, with the prior approval of the Corporation Counsel, may appeal the Board's decision to the District of Columbia Court of Appeals....

This language would appear to reserve to DAS the exclusive right to seek judicial review of CAB decisions. Francis maintains, however, that our decision in *Jones & Artis* eliminated this exclusive arrangement by assigning appeals of bid protests to the Superior Court. Francis specifically argues, initially, that someone must have the right to appeal a bid protest to the Superior Court on behalf of the District; failure to permit that would contravene the pre-*Jones & Artis* meaning of § 1–1189.5(b) and give contractors an unfair advantage over the District. *Cf. United States v. Interstate Commerce Comm'n,* 337 U.S. 426, 430–32, 69 S.Ct. 1410,

---

**9.** Although Francis has brought this action in her own name, she has no personal interest in the matter beyond her official duties. Her complaint reads: "By virtue of her position, Plaintiff Francis is charged with implementing...." Nor has she personally hired her own counsel to pursue the matter, or agreed to pay any sanction imposed. We therefore have no difficulty concluding that Francis has authority to sue—if at all— only in her official capacity as DPW Director.

1413–14, 93 L.Ed. 1451 (1949) (holding that United States as shipper does not have fewer rights than private commercial shipper and can seek judicial review of I.C.C. decision).[10] Francis then makes her fundamental point: while DAS may have the sole authority to appeal a CAB decision to the Court of Appeals, "[t]he Procurement Act is silent about who can bring an action in the Superior Court." Because of this legislative silence, Francis finds it logical to "look at the actual interests involved" and concludes that she is "the real party in interest" entitled to bring such an action.

 While we agree that the District has authority to appeal a CAB bid protest decision, we see no reason to believe that the Procurement Practices Act leaves room for anyone other than DAS to do so. In the first place, because DPW is not sui juris, Francis cannot bring this suit on behalf of DPW without legislative authorization found somewhere. To hold, as Francis apparently would have us, that any governmental entity with an "interest" can file suit on behalf of the District, unless the Council has positively forbidden it to do so, would violate the fundamental requirements of standing to sue. More specifically, even if Francis, as DPW Director or contracting officer—embodying the District's interests—can be shown, by virtue of the CAB's decision in favor of RSI, to have "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Speyer v. Barry,* 588 A.2d 1147, 1160 (D.C.1991) (internal quotation marks omitted), and can be said to fall within the zone of interests protected by the Procurement Practices Act, *see GIA,* 633 A.2d at 17—propositions that are dubious at best—she still cannot claim standing to sue if there is a clear legislative intent to withhold judicial review by placing that right in another. *See id.* (citing *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)).

Furthermore, our decision in *Jones & Artis* dealt strictly with choice of forum. Nothing in that opinion, and certainly nothing in the statute itself, suggests that the Council intended to give a District representative other than DAS the authority to file a bid protest if the specified forum turned out to be inappropriate. Even if DPW were sui juris, therefore, we would reject Francis's argument that, failing applicability of § 1–1189.5 pursuant to its exact terms (authorizing DAS to appeal the CAB's decision directly to this court), there is implied statutory room for another governmental department to seek judicial review of CAB orders in another, correct forum.

The legislative history of the Procurement Practices Act makes clear, if its plain statutory words do not, that the Council granted DAS the exclusive right to file bid protests on behalf of the District, whatever the forum. This conclusion is best confirmed by examining Francis's alternative argument that, if she lacks standing to bring this case simply as a "real party in interest," she is clothed with the statutory authority of the Mayor that trumps any exclusive right to sue that the Procurement Practices Act may confer on DAS. We turn to that contention.

### B. *Mayor's Inherent Authority*

At oral argument Francis presented for the first time a new idea. Noting that the statute says the DAS Director may appeal "with the prior approval of the Corporation Counsel," Francis contended that the authority to sue rests, fundamentally, with the Mayor as Chief Executive of the District and operates through the Corporation Counsel as the District's chief law officer. According to Francis, it follows that, in permitting her to bring this suit as the contracting officer, the Mayor and the Corporation Counsel have properly delegated to Francis the authority to act as their agent to do so.

 We cannot agree; we conclude that the Procurement Practices Act supersedes any authority the Mayor otherwise might have to appeal a CAB bid protest decision.

Under the District of Columbia Self-Government and Governmental Reorganization Act ("Home Rule Act"), all executive power

---

10. Because D.C.Code § 1–1189.5(b) supplies statutory authority for the District to appeal, we agree with Francis that the District—properly represented—may do so; we reject RSI's argument that no District officer can seek judicial review of a CAB decision.

of the District is vested in the Mayor. *See* D.C.Code § 1–242; *Convention Ctr. Referendum Comm. v. District of Columbia Bd. of Elections & Ethics*, 441 A.2d 871, 878 (D.C. 1980) (hereinafter *CCRC I*). The Corporation Counsel serves as the chief law officer and thus "[has] charge and conduct of all law business of the said District, and all suits instituted by and against the government thereof." D.C.Code § 1–361; *see* Reorg.Ord. No. 50, Part II(A) and (D), June 26, 1953, as amended; *In re T.L.J.*, 413 A.2d 154, 157 (D.C.1980). If these provisions stood alone, we might well agree with Francis's argument.

We must ask, however, whether the Council's passage of the Procurement Practices Act limited the Mayor's and Corporation Counsel's power to seek judicial review of CAB decisions against the District. We have said before that, just as the executive power is vested in the Mayor, the legislative power of the District (where not reserved to Congress) is vested in the Council. *See* D.C.Code § 1–227; *Convention Ctr. Referendum Comm. v. District of Columbia Bd. of Elections & Ethics*, 441 A.2d 889, 902–04 (D.C.1981) (en banc) (plurality opinion) (hereinafter *CCRC II*). The Council accordingly may enact legislation that restricts the actions of the Mayor. *See CCRC II,* 441 A.2d at 910. As elaborated below, we conclude that the Council deliberately chose to limit the Mayor's and the Corporation Counsel's authority in the procurement area and, thereby, conferred on DAS the exclusive authority to seek judicial review of CAB decisions against the District.

■ As a general rule, we look first to the plain language of a statute to determine its meaning. *See James Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989). Here, the plain meaning of the statute clearly cuts against Francis's position. Section 1–1189.5(b) provides: "the Director [of DAS], with the prior approval of the Corporation Counsel, ... may appeal the Board's decision...." This

language makes clear that, while the Corporation Counsel has a role to play, that officer may not unilaterally bring an appeal. Furthermore, an examination of the act's legislative history confirms that DAS—and no other executive authority—is the agency the Council has authorized to initiate an appeal, whether to this court or to the Superior Court.

From the beginning, the Council desired a centralized process to eliminate the inefficiencies and waste caused by the decentralized, competing, and inconsistent procurement procedures then in place. COMMITTEE ON GOVERNMENT OPERATIONS, REPORT ON BILL 5–335, "DISTRICT PROCUREMENT ACT OF 1984" 1–2 (1984) (hereinafter 1984 COMMITTEE REPORT); COMMITTEE ON GOVERNMENT OPERATIONS, REPORT ON BILL 6–191, "DISTRICT OF COLUMBIA PROCUREMENT PRACTICES ACT OF 1985," AMENDMENT IN NATURE OF A SUBSTITUTE 1–2 (1985) (hereinafter 1985 COMMITTEE REPORT).[11] The legislative history also shows much discussion and negotiation regarding the respective roles of the Mayor and of DAS in the procurement process, including the authority to seek judicial review of CAB decisions.

The initial version of the Procurement Act, Bill 5–335, introduced on December 1, 1983, sharply curtailed the role of the Mayor in procurement. *See* District of Columbia Procurement Practices Act of 1983, D.C. 5–335 (1983). It centralized all procurement power in the Director of the Department of General Services (later DAS) and in a proposed Chief Procurement Officer. *See id.* §§ 2–101, –102. Only the Chief Procurement Officer, with the "assistance" of Corporation Counsel, could appeal a CAB decision on behalf of the District. *See id.* § 10–304(b). The Council referred the bill to the Committee on Government Operations. 1984 COMMITTEE REPORT at 1.

Comments by the Mayor and the Corporation Counsel's office caused the Committee on Government Operations to rethink this position. *See id.* at 3–4. The Committee

---

11. With Bill 5–335, the Council initially attempted in 1984 to enact legislation centralizing procurement practices. When Bill 5–335 did not pass, the Council reconsidered the matter in

1985 and adopted Bill 6–191. *See* 1985 COMMITTEE REPORT at 2. Bill 6–191 expressly incorporated the legislative history of Bill 5–335. *See id.*

introduced a new version of Bill 5–335 that recognized the Mayor as the "overall authority for procurement," with the power to delegate authority to DAS. *Id.* at 2. Under the new version, only the Mayor "with the prior approval of Corporation Counsel" could seek judicial review of a CAB decision. *Id.* at 11; Committee Print of Bill 5–335 § 905(b). This new version, however, failed to win the Council's approval. The Council continued the matter until the next session, when Councilmember Spaulding reintroduced the proposed legislation as Bill 6–191. *See* 1985 COMMITTEE REPORT at 1.

The new—and final—version of the Procurement Practices Act struck a balance between the power of the Mayor and the authority of DAS in procurement. "Bill 6–191 recognizes the Mayor as being the Chief Executive but mandates the delegation of procurement authority to the [DAS]." *Id.* at 2. The bill gave the Mayor the important policymaking function of creating regulations but centralized operational decisions in DAS. *See id.* The Committee stressed that "[o]ne of the major concerns addressed by this legislation is the separation of the policymaking and operational functions relating to procurement." *Id.* This, the Committee believed, would both "elevate the entire procurement process in the eyes of the general public" and "ensure the professional integrity of those involved in the process by creating additional checks and balances." *Id.* In delineating who would exercise what authority, the Committee stated:

> The Mayor would determine matters of procurement policy and issue rules and regulations.... DAS would be responsible for carrying out all aspects of the purchase and delivery ... *as well as determin[ing] that all purchases are made consistent with existing laws and regulations.*

*Id.* at 3 (emphasis added). The Committee further noted that DAS would "settle disputes arising from the performance of contracts," *id.* at 4, and that the bill "[p]rovides for the Director to seek judicial review of a decision of the Board," *id.* at 11.

Seen in this context, § 1–1189.5(b) cannot mean, as Francis would have it, that the Mayor and the Corporation Counsel have overall authority to decide whether the District may appeal a CAB decision. Instead, statutory limitation of such appeal authority to DAS appears to be consistent with the Council's desire to create a system of checks and balances in the procurement process between the broad policy-making role of the Mayor and the operational role of DAS. The fact that the Council mistakenly authorized DAS to seek review of "bid protests" directly in this court, *see Jones & Artis,* does not detract from the clear indication that the Council desired DAS to initiate all such applications for review. The unavailability of this court as the initial appellate forum for one kind of review does not in any way suggest that some executive authority *other* than DAS is empowered to appeal a bid protest simply because the Council failed to realize a particular forum was unavailable to DAS. Accordingly, because only DAS has statutory authority to initiate appellate review of CAB procurement decisions on behalf of the District government, the Mayor—even with concurrence of the Corporation Counsel—cannot appoint Francis as agent to bring this action.

### C. *DPW Director as Contracting Officer*

 . By the same logic, we reject the argument that Francis had authority to bring this suit in her capacity as contracting officer. The legislative history demonstrates the Council's clear desire to avoid any such possibility in favor of centralizing control in the Director of DAS. Indeed, Francis's statutory argument based on her status as contracting officer is even weaker than her contention based on her status as DPW Director or as agent of the Mayor, since D.C.Code § 1–1181.5(b)(2) expressly subjects contracting officers to the authority and review of the DAS Director.

Not long ago, the Supreme Court had occasion to consider the very kind of argument Francis makes here. In *Director, Office of Workers Compensation Programs, Department of Labor v. Newport News Shipbuilding & Dry Dock Co.,* 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995), the Director of the Office of Worker's Compensation Programs for the United States Department of

Labor sought judicial review of a decision of the Benefits Review Board in a case decided under the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 (1994). The Supreme Court did not permit the review; the Court held that it would be contrary both to established case law and to public policy to recognize that an agency's "policy interest" could give rise to standing in the absence of a specific statutory grant of authority. *See Newport News,* 514 U.S. at 132–134, 115 S.Ct. at 1286–87.

> To acknowledge the general adequacy of such an interest would put the federal courts into the regular business of deciding intrabranch and intraagency policy disputes—a role that would be most inappropriate.
>
> . . . .
>
> ... Every statute proposes, not only to achieve certain ends, but also to achieve them by particular means—and there is often a considerable legislative battle over what those means ought to be. The withholding of agency authority is as significant as the granting of it, and we have no right to play favorites between the two.

*Id.* at 129–130, 136, 115 S.Ct. at 1284–85, 1288. We agree. It is clear to us, from the language of the Procurement Practices Act and its legislative history, that the Council meant to withhold the power to seek judicial review of CAB decisions from everyone but DAS.

### D. *The Recycling Act*

■ Francis cites two provisions in the Solid Waste Management and Multi–Material Recycling Act, D.C. Law 7–226 (1989), codified at D.C.Code §§ 6–3401 to –3423 (1995 Repl.) (hereinafter Recycling Act). Under § 12 of the Recycling Act, D.C.Code § 6–3411(a), "[t]he Director of the Department of Public Works shall enter into contracts or agreements to market recyclable materials." The same act also gives the Mayor authority to enter into contracts to establish the "multi-material buy-back center" mandated by § 6–3410. *See id.* §§ 6–3410(a), –3411(a). The Mayor delegated his authority regarding establishment of the buy-back facility to the Director of DPW. Mayor's Order 89–160, 36

D.C.Reg. 5690 (1989). Francis therefore argues that the contracting power in these sections provides her with authority to seek judicial review of CAB decisions relating to these contracts.

Again, we reject Francis's statutory interpretation. She has cited no statutory language or legislative history that would indicate any desire by the Council to modify the system established by the Procurement Practices Act. To accept Francis's argument, we would have to conclude that whenever a statute bearing on procurement does not specify that the Procurement Practices Act in all respects applies, various involved District officials may litigate as they wish. Such a ruling would defeat the intended legislative purpose of a universal procurement system.

Nor can the Mayor's delegation of authority over the buy-back facility clothe Francis with power to initiate this litigation. The Mayor cannot delegate power the Mayor does not have. Since nothing in the buy-back facility authorization indicates that the Mayor could circumvent the Procurement Practices Act, Francis cannot claim that the Mayor's delegation gives her the power to do so herself.

\* \* \* \* \* \*

■ Nothing in the Home Rule Act, the Procurement Practices Act, the Recycling Act, or any other statute—nor any "interest" inherent in Francis's role as DPW Director or contracting officer—suggests that a District official, other than the Director of DAS, may seek judicial review of a CAB decision. The provision of the Procurement Practices Act requiring DAS to obtain Corporation Counsel's approval of any such suit does not authorize Corporation Counsel to delegate to someone else the authority to initiate judicial review. Nor does anything in the Recycling Act suggest that the legislature wished to supercede the Procurement Practices Act for a case such as this.

### VI. Francis's Proposed Cure

Francis argues that if she is not a proper plaintiff-appellant, and if she has not named the proper defendant, then the trial court should have granted her leave to name a

proper plaintiff and defendant. In support of this position, Francis invokes two rules of civil procedure. To find a proper plaintiff, Francis cites Super.Ct.Civ.R. 17(a):

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest....

For a proper defendant, Francis relies on Super.Ct.Civ.R. 19(a), which provides in relevant part that the court shall join as a party any person in whose "absence complete relief cannot be accorded among those already parties."

## A. Rule 17(a)

■ Francis raised the Rule 17(a) issue as a fallback argument, which the trial court rejected without explanation. We conclude as a matter of law that the trial court did not abuse its discretion by denying Francis's Rule 17 motion. *See ICON Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 476 & n. 3 (3d Cir.1987) (holding that standard of review for Rule 17 and 19 dismissals is abuse of discretion); *see also Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472, 1477 (11th Cir.1991).

Rule 17(a) should be applied "only to cases in which substitution of the real party in interest is necessary to avoid injustice." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1555 (2d ed.) (hereinafter WRIGHT, MILLER & KANE). We do not face here a situation in which a party has made a technical error in attempting to bring a suit for another. *See, e.g., Duckett v. District of Columbia*, 654 A.2d 1288, 1291 (D.C.1995). Francis did not proffer who the proper plaintiff would be; nor did she demonstrate that anyone other than Francis wished to carry the suit forward. Nor has Francis attempted to name another, proper defendant. To allow Francis to hunt up a new plaintiff and a new defendant simply to maintain an action that has neither a proper plaintiff nor a proper defendant to begin with hardly seems calculated "to avoid injustice" when the inter-

ests of all affected persons are considered. Federal courts interpreting Rule 17 have made it clear that the rule protects plaintiffs against honest mistakes and technical errors; it cannot be used to preserve or generate causes of action. *See, e.g., Consumer Fed'n of Am. v. Upjohn Co.*, 346 A.2d 725, 729 (D.C.1975) (holding that dismissal of suit where representative organization had no standing, rather than allowing organization to find affected members and add them to complaint, was "consistent with the spirit of Super.Ct.Civ.R. 17(a)"); *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir.1989) ("Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake; it is not a provision to be distorted by parties to circumvent the limitations period."); *O'Donnell v. Kusper*, 602 F.Supp. 619, 624 (N.D.Ill.1985) ("Rule 17(a) is intended to allow substitution when an improper plaintiff has been inadvertently named; it is not intended to permit an attorney to locate and substitute a new plaintiff, suing upon a new claim, simply to sustain a pending action.").

We also conclude, in this particular case, that allowing Francis to go back to ask DAS to ratify her complaint after the case had progressed as far as it had in the trial court would be altogether inappropriate. "[W]hen the determination of the right party to bring the action [is] not difficult ... the action should be dismissed." 6A WRIGHT, MILLER & KANE § 1555. In this case, the statute and legislative history clearly identify DAS as the only appropriate plaintiff. In any event, to allow Francis to begin the action and then seek DAS's ratification would defeat the purpose of the Procurement Practices Act to centralize in DAS the decision to initiate review of CAB decisions. See *supra* part V.B. Accordingly, we reject Francis's argument that the trial court abused its discretion by not permitting her to seek ratification of the action by DAS under Rule 17(a).

## B. Rule 19

We note at the outset that defendant RSI did not seek dismissal under Super.Ct.Civ.R. 19(b) (failure to join an indispensable party) but did so under Super.Ct.Civ.R. 12(b)(6)

(failure to state a claim for which relief can be granted). Nor did the trial court invoke Rule 19 as a ground for dismissal.[12] The only one who has invoked Rule 19 is Francis.

 Francis's invocation of Rule 19, however, is problematic in a number of ways. First, we have decided that Francis has no right to bring this action and no right to seek a proper plaintiff to ratify her complaint. See *supra* parts V, VI.A. Second, Francis asks here not for the joinder of a necessary party but for the substitution of the correct party for an incorrect one. We have stated that "[j]oinder under [Rule 19] is ... designed to protect those *already parties* from the possibility of multiple suits concerning the same dispute." *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 21 (D.C.1991) (emphasis added). Replacing RSI with the CAB does not protect anyone who is already a proper party from any future potential litigation, particularly where Francis herself must drop out of the litigation.

 Finally, Francis raises Rule 19 as a plaintiff who seeks to substitute one defendant for another, but she has cited no case or relevant authority for using Rule 19 in that way.[13] We agree with RSI that the appropriate path for Francis would have been to amend her complaint to add CAB and drop RSI. *See* Super.Ct.Civ.R. 15(a), 21. Her failure to do so is not necessarily fatal, how-

ever, since we have said we will not penalize plaintiffs for inept and inartful pleadings if a desire to amend is implicit in plaintiff's arguments. *See Keith v. Washington*, 401 A.2d 468, 471–72 (D.C.1979) (remanding so trial court could consider whether to allow plaintiff to amend complaint to add District as defendant when claims against other defendants dismissed and plaintiff had orally offered to amend in trial court, and it was unclear whether plaintiff had in fact already named District as defendant). Nonetheless, for reasons that follow, even if we assume for the sake of argument that Francis had authority to bring this suit and had asked the court for permission to amend, we would affirm the trial court's dismissal of the action. *See Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n*, 641 A.2d 495, 501 (D.C.1994) (noting that grant or denial of leave to amend complaint is reviewed for abuse of discretion).

 Francis argues that the trial court, in refusing to allow her to join the proper defendant, elevated "form over substance." Francis also says that, because RSI undoubtedly would have intervened, RSI suffered no real harm as a result of being named the defendant. Francis, therefore, claims abuse of trial court discretion in failing to substitute the proper defendant, the CAB. She relies on our recent decision in *District of Columbia Dept. of Admin. Servs. v. Interna-*

---

**12.** At the conclusion of its order, the trial court stated: "Mindful of the requirement that the court must construe the complaint in the light most favorable to the Plaintiff and assume all of Plaintiff's factual allegations are true, the court holds the motion for dismissal based on Rule 12(b)(6) must be granted." At one point, the trial court did say, apparently in reference to Francis' argument that joinder under Rule 19 was the preferable alternative to dismissal:

Further, under Superior Court Civil Rule 19, CAB is a necessary party. However, because joining CAB will not remedy the wrongful naming of RSI as the Defendant, this Court will not order CAB joined as a necessary party.

While this language suggests possible dismissal under Rule 19, we do not believe it should be taken that way. In *District of Columbia Department of Administrative Services v. International Brotherhood of Police Officers, Local 445*, 680 A.2d 434 (D.C.1996) (hereinafter *IBPO*), we concluded that identical language indicated the court had dismissed the claim under Su-

per.Ct.Civ.R. 41(b) (failure of plaintiff to comply with rules or orders of court). *See IBPO*, 680 A.2d at 436 n. 2. Certainly here, where the trial court has specified dismissal under Rule 12(b)(6), and where the trial court has engaged in none of the explicit analysis required to dismiss under Rule 19, *see Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 20 (D.C.1991), we have no difficulty concluding that the trial court did not dismiss under Rule 19.

**13.** We recognize that a plaintiff may invoke Rule 19 in the rare case where the interests of justice require the joinder of an "involuntary plaintiff." *See* Super.Ct.Civ.R. 19(a) ("If the person should join as a plaintiff but refuse[s] to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff."); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE § 1606. As always, " 'questions of compulsory joinder are to be resolved on the basis of practical considerations.' " *Capital City Corp. v. Johnson*, 646 A.2d 325, 329 (D.C.1994) (quoting 7 WRIGHT, MILLER & KANE § 1607).

*tional Bhd. of Police Officers, Local 445*, 680 A.2d 434 (D.C.1996) (hereinafter *IBPO*), where we reversed a trial court dismissal for failure to name the agency as respondent in the caption of a petition for review.

A comparison of the facts in the two cases, however, demonstrates why *IBPO* has no relevance here. In *IBPO*, DAS named IBPO as respondent in the caption of a petition seeking review of an order of the Public Employee Retirement Board (PERB) favorable to IBPO. DAS used the standard form for a petition for review found in the appendix to Super.Ct.Civ. Agency Rev.R. 1. DAS served both the IBPO general counsel and the Director of PERB. PERB immediately moved to intervene. All parties consented to PERB's intervention. In its reply to IBPO's motion to dismiss, DAS responded to PERB's, as well as to IBPO's, briefs. At no time did DAS argue that PERB was not a necessary party to the action. *See id.* at 435–36, 438. Accordingly, none of the parties behaved any differently from the ways they would have behaved if PERB, rather than IBPO, had been named in the caption of the petition as respondent, and thus none of the parties could claim any prejudice from DAS's mistake. *See id.* at 438.[14]

Here, however, Francis did not use the standard form found in the appendix to Super.Ct.Civ. Agency Rev.R. 1; she used the standard form for a civil complaint. *See supra* note 1. Nor did Francis serve the CAB or treat CAB as a necessary party. *See supra* note 1. To the contrary, Francis has argued vigorously that the CAB is not a necessary party, and at every level of this action Francis has fought against including the CAB as a party. Nor did the CAB make any effort to intervene in the action. In contrast with *IBPO*, the trial court did not have the benefit of the agency's input and defense of its actions.

In *IBPO*, we held that the trial court abused its discretion by dismissing the case because the plaintiff essentially committed merely a technical pleading error, without serious prejudice to anyone. We thus emphasized the liberal rule that pleading is not "'a game of skill in which one misstep of counsel may be decisive to the outcome'"; rather, "'the purpose of pleading is to facilitate a proper decision on the merits.'" *Id.* at 438 (quoting *Industrial Bank v. Allied Consulting Servs.*, 571 A.2d 1166, 1167 (D.C. 1990) (per curiam)). Here, in contrast, we do not deal with a technical pleading error. The trial court, therefore, did not abuse its discretion in refusing to allow Francis to substitute the proper defendant when Francis actively sought to avoid suing that proper defendant (CAB) at the expense of an improper party (RSI).

Furthermore, we agree with the trial court that "joining the CAB will not remedy the wrongful naming of RSI as the Defendant." Francis's argument that RSI would certainly have intervened had she sued the CAB is pure speculation. Francis can hardly claim to speak with authority about what RSI might or might not have done. Even if RSI had intervened, however, and the CAB had been a party, RSI would not have been forced to carry the burden of defending the CAB's decision alone—and at RSI's own expense.

Francis further speculates that the CAB might have refrained from defending its own decision and protecting itself from an attack on its powers, and thus might have left the defense of its order to RSI, as putative intervenor, because "[t]here is no requirement that the government spend taxpayer's dollars defending private interests." Perhaps. Even so, however, Francis cannot require private citizens to spend their own money to defend agency decisions in their favor—however much that might aid the District in times of financial difficulty—as Francis appears to suggest here. The decision to defend an agency decision (or not) rests entirely with the agency challenged, here the CAB.

■ Finally, an intervenor does not have the status of a defendant. *See Dankman*, 443 A.2d at 516–19 (opinion of Harris, J.). In *IBPO*, we concluded that the court should

---

**14.** IBPO, therefore, was treated in effect as an intervenor. We specifically said, however, that if IBPO did not wish to be a party to the litigation, it could move to withdraw and receive its costs for improperly being joined as "respondent." *See id.* at 438.

allow DAS to proceed, despite possible prejudice to IBPO from forcing it to participate, for three reasons. First, DAS had every right to petition the court for review. *IBPO,* 680 A.2d at 438. Second, PERB had "acted, for all practical purposes, as the respondent it truly [was]," *id.,* and the trial court had the full benefit of PERB's participation, *see id.* Third, IBPO could be made whole by dismissal of IBPO as a party and an award of IBPO's costs. *See id.* None of these factors is present here. Francis did not have the right to pursue this action, the CAB has not participated in any way, and Francis has actively opposed awarding RSI its costs.

Francis cites two cases in which we have required the trial court to join a necessary party under Rule 19: *Capital City Corp. v. Johnson,* 646 A.2d 325 (D.C.1994), and *Raskauskas v. Temple Realty Co.,* 589 A.2d 17 (D.C.1991). In those cases, however, we required the court to join an indispensable party when other parties already had been properly named as defendants. Indeed, as we noted above, *Raskauskas* stands for the proposition that joinder protects those already party to the action. *See Raskauskas,* 589 A.2d at 21. Francis has cited no case, other than *IBPO,* where we have required the addition of a party when none of the parties named as a defendant had been properly named as such; and Francis has certainly cited no case in which there were not only no properly named defendants but also no proper plaintiff—as in this case.

Viewing Francis's request to substitute defendants as a motion to amend under Rule 15, we have stated that leave to amend the complaint under Super.Ct.Civ.R. 15 is left to the discretion of the trial court. *See Gordon v. Raven Sys. & Research, Inc.,* 462 A.2d 10, 13 (D.C.1983). "It is the responsibility of the trial court, when exercising its discretion, to fashion a ruling by balancing a variety of factors. Among those factors are the length of the pendency of the proceedings, the existence of bad faith or dilatory motive, prejudice to the opposing party ... and the orderly administration of justice." *Id.* As

described above, Francis never served or otherwise notified the CAB that it would become a party. Indeed, Francis fought to keep the CAB out of this action altogether, and in the entire two year history of this litigation Francis has made no affirmative effort to bring the CAB into it. At best, Francis has asked the court—but only if the court finds it absolutely necessary—to bring the CAB in on the court's own motion. Furthermore, Francis's actions have been extremely prejudicial to RSI, which has been forced to carry on the action alone because of Francis's adamant resistance to naming the CAB. Needless to say, although we do not impute to Francis any bad faith or dilatory motive,[15] such actions are inconsistent with the orderly administration of justice. Therefore, even if Francis had the right to amend the complaint, and even if we read Francis's arguments regarding Rule 19 as implying a desire to amend under Rules 15 and 21, we would affirm the trial court's refusal to substitute CAB for RSI as the defendant.

\* \* \*

We therefore must conclude that the trial court did not abuse its discretion in dismissing the complaint under Rule 12(b)(6) and in refusing to allow Francis to find a proper plaintiff and a proper defendant. While we believe we must interpret the rules of civil procedure liberally to assure justice under the circumstances, *see Eagle Wine & Liquor Co. v. Silverberg Elec. Co.,* 402 A.2d 31, 34 (D.C.1979), we conclude that this very objective cuts against Francis's contentions here. We affirm in Appeal No. 95–CV–976.

## VII. Rule 11 Sanctions

We turn now to Francis's appeal of the order granting RSI costs and attorney's fees as a sanction under Super.Ct.Civ.R. 11 (Appeal No. 95–CV–1063), and to RSI's related cross-appeal seeking lost profits (Appeal No. 95–CV–1044). Before we may consider the appropriateness of the Rule 11 order, however, we must determine whether we have jurisdiction over these appeals.

---

**15.** Although the trial court ultimately found that Francis had acted with an improper purpose in connection with RSI's request for Rule 11 sanctions, the court made no such finding in connection with its decision to dismiss.

## A.

This case concerns two trial court orders: (1) the April 18, 1995 dismissal of Francis's complaint by granting RSI's motion to dismiss under Rule 12(b),[16] and (2) the July 24, 1995 award of sanctions against Francis (in her official capacity) under Super.Ct.Civ.R. 11, namely, the "reasonable cost for the Defendant to respond to the action filed before this court, including the time for the Motion for Sanctions." In this second order, the trial court further ruled that "RSI's lost profits shall not be included." The court then asked RSI to submit "the attorney's hourly rate, and a statement of fees and costs, related to the action," after which Francis could file a response and the court would rule on the exact amount payable to RSI. The dismissal of the complaint (No. 95–CV–576), the Rule 11 liability order (No. 95–CV–1063), and the Rule 11 denial of RSI's lost profits (No. 95–CV–1044) were appealed separately, as indicated.

 This court has jurisdiction over final orders, see D.C.Code § 11–721(a)(1) (1995 Repl.), and over certain interlocutory orders specified by statute, see id. § 11–721(a)(2), (3), by court rule, Super.Ct.Civ.R. 54(b), and by the "collateral order" doctrine, see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); In re Estate of Chuong, 623 A.2d 1154, 1157 (D.C.1993) (en banc) (collecting cases). The dismissal of Francis's complaint is a final order, appealable separately from the Rule 11 order.[17] An order granting attorney's fees as such, however, is not final until the entry of the amount of attorney's fees.[18] We believe the reasoning of our decisions on the finality of attorney's fees, see supra note 18, applies equally to Rule 11 sanctions. We therefore conclude that an order entitling a party to a Rule 11 award of costs and attorney's fees in an amount yet to be determined is a nonfinal order, see D.C.Code § 11–721(a)(1), that is not otherwise appealable by statute. See D.C.Code § 11–721(a)(2) & (3). Nor is there certification under Rule 54(b) or qualification under the collateral order doctrine here. See Cohen, 337 U.S. at 546, 69 S.Ct. at 1225–26; In re Estate of Chuong, 623 A.2d at 1157.

This nonappealability of a nonfinal Rule 11 order viewed in isolation, however, is not automatically determinative of our jurisdiction over it, because that order comes packaged here with an appealable dismissal order and thus potentially triggers still another exception to finality which this court has never considered: pendent appellate jurisdiction. See Swint v. Chambers County Comm'n, 514 U.S. 35, 45–48 & n. 2, 115 S.Ct. 1203, 1209–10 & n. 2, 131 L.Ed.2d 60 (1995); Gilda Marx, Inc. v. Wildwood Exercise, Inc., 318 U.S.App.D.C. 109, 112–14, 85 F.3d 675, 678–80 (1996).

In Swint, the Eleventh Circuit, in reviewing a district court order denying police officers qualified immunity for alleged civil rights violations under 42 U.S.C. § 1983—an order appealable before trial—had exercised

---

**16.** Technically, while a motion to dismiss based on improper plaintiff and improper defendant can be granted under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the trial court's alternate ground for dismissal, lack of subject matter jurisdiction—which we rejected—is properly grounded on Rule 12(b)(1).

**17.** See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 197, 199, 108 S.Ct. 1717, 1719, 1720, 100 L.Ed.2d 178 (1988) (holding that in action "to recover employment compensation allegedly due," district court denial of new trial motion, and noting that a "decision on the merits," is a final, appealable order and noting that "[a] question remaining to be decided after an order ending litigation on the merits"—there, attorney's fees—"does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order"); Marlyn Condo-

minium, Inc. v. McDowell, 576 A.2d 1346, 1347 n. 1 (D.C.1990) (holding that "injunctive order" was final and appealable despite appellate court's dismissal of related, nonfinal order awarding attorney's fees with amount yet to be determined).

**18.** See Trilon Plaza Co. v. Allstate Leasing Corp., 399 A.2d 34, 37 (D.C.1979) (noting that final, appealable order is order that "determined the quantum of attorney's fees to be paid rather than the order ... which merely established entitlement to attorney's fees in an amount to be later determined"); accord Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights, 687 A.2d 215, 220 (D.C.1997); Robinson v. Howard Univ., 455 A.2d 1363, 1365–66 n. 1 (D.C.1983); id. at 1370 & n. 1 (Terry, J., dissenting in part).

"pendent appellate jurisdiction" to reverse the otherwise nonappealable district court denial of summary judgment for a co-defendant, the County Commission, which was not even a party to the appeal. *See Swint*, 514 U.S. at 43–44, 115 S.Ct. at 1208–09. The Supreme Court reversed. It recognized that "it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." *Id.* at 50–51, 115 S.Ct. at 1212. The Court emphasized, however, that Congress had carefully circumscribed the courts of appeals' authority to entertain interlocutory appeals by generally limiting them to appeals certified by the district courts under FED.R.CIV.P. 54(b), *see Swint*, 115 S.Ct. at 48, 115 S.Ct. at 1210–11, and had further limited such appellate court power by intending the Rules Enabling Act, 28 U.S.C. §§ 2071–77 (1994), to guide expansion of interlocutory appellate jurisdiction by court rule, not "by court decision," *Swint*, 514 U.S. at 48, 115 S.Ct. at 1211.

Indicating criteria that might justify pendent appellate jurisdiction, the Court added that no one had contended "that [1] the District Court's decision to deny the Chambers County Commission's summary judgment motion was *inextricably intertwined* with that court's [immediately appealable] decision to deny the individual defendants' qualified immunity motions, or that [2] review of the former decision was necessary to ensure meaningful review of the latter." *Id.* at 51, 115 S.Ct. at 1212 (emphasis added). In referring to these two criteria, however, the Court noted that it was "not definitively or preemptively settl[ing] here whether or when it may be proper for a court of appeals" to exercise such jurisdiction. *Id.*

A year after the *Swint* decision, the United States Court of Appeals for the District of Columbia Circuit in *Gilda Marx, Inc.*—while recognizing that pendent appellate jurisdiction over nonfinal attorney's fee liability was not absolutely barred—declined to assume

pendent jurisdiction in a case where the district judge had awarded attorney's fees for time spent defending a RICO[19] claim but had not yet fixed the amount. *See* 318 U.S.App.D.C. at 112, 85 F.3d at 678. The court said it would "entertain pendent appeals only when substantial considerations of fairness or efficiency demand it." *Id.* at 113, 85 F.3d at 679. In addition to the two criteria *Swint* had cited in justification of such review, the court added another, though not altogether distinct, criterion: "[t]he appeals may be so closely related, or turn on such similar issues, that a single appeal should dispose of both simultaneously" and, in some cases, terminate the entire proceeding without a second appeal. *Id.* The court, however, then warned against taking pendent appeals that meet even one of these criteria if, for example, the record on appeal would be inadequate for review, or the trial court had not had "an opportunity to render a considered decision" on the collateral order, or the issue "might be mooted or altered" by subsequent trial court proceedings, or the pendent appeal would "predominate" over a relatively insignificant, though independently appealable, order. *Id.*

After making this useful survey of the considerations affecting pendent appellate jurisdiction in light of *Swint*, the court in *Gilda Marx, Inc.* declined to exercise such jurisdiction because the attorney's fee appeal satisfied none of the allowable criteria—and suffered several of the negatives—that inform the decision whether to exercise such jurisdiction. In addition, the court noted that, under the peculiar circumstances of the case, the very "propriety of the district court's liability ruling" on the fee award might be difficult to decide "without a determination of the amount of the award" itself. *Id.* at 114, 85 F.3d at 680.

### B.

▪ We are satisfied that prior decisions of this court do not dictate the result in the

---

**19.** Racketeer Influenced Corrupt Organizations provisions of the Organized Crime Control Act of

1970, 18 U.S.C. §§ 1961–68 (1994).

case presently before us.[20] For the reasons that follow, however, we conclude that a Rule 11 analysis on this record meets none of the criteria that would justify our exercise of pendent appellate jurisdiction over an otherwise nonfinal, nonappealable order.

In the first place, review of the liability analysis justifying Rule 11 sanctions is not "necessary to ensure meaningful review" of the appealable, dismissal order; we can decide the latter without considering the former. There is, however, a serious question whether the Rule 11 order is "inextricably intertwined" with the ruling on the motion to dismiss, because Francis's improper naming of RSI as defendant was a principal basis for the Rule 11 order against her. *See Swint*, 514 U.S. at ——, 115 S.Ct. at 1212; *Gilda Marx, Inc.*, 318 U.S.App.D.C. at 113, 85 F.3d at 679.

Some trial court orders are "inextricably intertwined" because the appealable final order cannot be effectuated until the nonfinal order is decided—a mutual relationship that also satisfies *Swint's* other criterion ("necessary to ensure meaningful review").[21] Other orders are inextricably linked because they present essentially the same issues; i.e., resolution of the appealable order virtually determines the result for the nonappealable order.[22] We are not aware, however, of "inextricable linkage" cases after *Swint* where the appellate court's ruling on the final, appealable order (e.g., dismissal)—while going a long way toward suggesting how the nonfinal, pendent appeal (e.g., Rule 11 liability) should be decided—does not go far enough virtually to determine the result. Before *Swint*, several federal circuits invoked pendent appellate jurisdiction when the overlap between appeals was not so complete; they were "substantially related," for example, but not "inextricably" so.[23] As we read *Swint* and *Gilda Marx, Inc.*, however, there

---

**20.** Our decision in *Marlyn Condominium, Inc.*, supra note 17, 576 A.2d at 1347 n. 1, does not preclude our exercising pendent appellate jurisdiction over the Rule 11 order. In that case, the trial court enjoined a condominium board from imposing a special assessment to replace existing windows to cure a serious water seepage problem. We remanded for further proceedings to reconsider the ruling in light of the Board's "right of access and concomitant duty to repair." *Id.* at 1351. The trial court had awarded appellees their attorney's fees under the "common benefit" doctrine, *see id.* at 1347 n. 1 (citing *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 389–97, 90 S.Ct. 616, 624–28, 24 L.Ed.2d 593 (1970)), but apparently had not yet determined the specific amount to be awarded, *see id.* Relying on *Trilon Plaza Co.*, 399 A.2d at 37, *supra* note 18, this court held the attorney's fee issue not yet appealable—and thus dismissed that particular appeal—but noted that, "[n]otwithstanding the open issue of attorney's fees ... the injunctive order is properly before us." *Marlyn Condominium, Inc.*, 576 A.2d at 1347 n. 1 (citing *Budinich*, 486 U.S. at 202–03, 108 S.Ct. at 1721–22). Our opinion did not consider a Rule 11 issue; it did not address the possible availability of pendent appellate jurisdiction (nor did *Trilon Plaza Co.* on which it relied); and resolution of the attorney's fee issue was neither necessary to resolution of the injunction issue nor fully resolvable by reference to the particulars of the injunction issue—all in contrast with the dismissal/Rule 11 issues that are substantively related to each other in the present case and, for that reason, at least suggest the possibility of our pendent jurisdiction.

**21.** *See Illinois ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir.1988) (concluding that orders were "inextricably entwined" because success in challenging expressly appealable order freezing assets of automobile dealership would mean little if court declined to exercise pendent appellate jurisdiction over nonappealable order appointing receiver to control assets); *cf. Golino v. City of New Haven*, 950 F.2d 864, 868–69 (2d Cir.1991) (concluding that orders "sufficient[ly] overlap" for pendent jurisdiction, reflecting their "close relationship," because determination of nonappealable collateral estoppel ruling essential to resolution of appealable qualified immunity ruling).

**22.** *See TransWorld Airlines, Inc. v. American Coupon Exch., Inc.*, 913 F.2d 676, 681 (9th Cir.1990) ("Because ACE's counterclaim [for tortious interference with business relations] virtually repeats the allegations of TWA's complaint, except for offering opposite legal conclusions, and closely follows ACE's own affirmative defenses to that complaint, we conclude that the [nonappealable order granting TWA summary judgment on ACE's counterclaim] was 'inextricably bound up' with the [appealable order granting TWA] summary judgment on TWA's complaint.").

**23.** *See, e.g., Roberson v. Mullins*, 29 F.3d 132, 136 (4th Cir.1994) ("substantially overlap"); *Consarc Corp v. Iraqi Ministry*, 307 U.S.App.D.C. 245, 250, 27 F.3d 695, 700 (1994) ("closely related"); *Akers v. Caperton*, 998 F.2d 220, 224 (4th Cir.1993) ("substantially related").

is little if any room now for pendent jurisdiction based on such incomplete overlap of the appeals.

■ We conclude, accordingly, that under *Swint*, as elaborated in *Gilda Marx, Inc.*, pendent appellate jurisdiction will not be available unless either the appealable or the nonappealable order virtually determines the result of the other. The question, then, is whether our resolution of the trial court's dismissal of Francis's lawsuit would virtually determine resolution of the trial court's nonfinal liability order under Rule 11.[24]

## C.

■ The version of Rule 11 in effect at the time of the trial court's decision provides, in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that [1] to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that [2] it is not interposed for any improper purpose, such as to harassor to cause unnecessary delay or needless increase in the cost of litigation.

A Rule 11 violation, therefore, can be attributable to lack of a reasonable pre-filing inquiry, or to an improper purpose, or to both. *See Office & Professional Employees Int'l Union, Local No. 2 v. International Bhd. of Painters & Allied Trades*, 580 A.2d 630, 634–36 (D.C.1990) (holding appellee violated Rule 11 as a matter of law for failure to make reasonable prefiling inquiry); *Chevalier v. Moon*, 576 A.2d 722, 724 (D.C.1990) (holding appellant's bad faith justified award of Rule 11 sanctions). The trial court's Rule 11 decision in this case is premised on both.

Fundamentally, the trial court based its Rule 11 order on one of the reasons for the court's dismissal of Francis's complaint: failure to name a proper defendant.[25] The court, however, also made a second finding: the complaint was interposed for an "improper purpose." [26] That finding, while perhaps

---

**24.** The question is not whether appellate review of the dismissal order will virtually determine the entire Rule 11 issue: liability *and* sanctions. The sanctions question, although pendent to the Rule 11 liability issue, has not yet been decided in the trial court and is not a part of the universe of orders—final and nonfinal—for which inextricable linkage is to be assessed here. Basically, therefore, the focus is on the judicial economy of resolving the liability portion of the Rule 11 issue in this appeal: will its resolution be justified because our decision on the dismissal issue will virtually determine Rule 11 liability? *See Gilda Marx, Inc.*, 318 U.S.App.D.C. at 113–14, 85 F.3d at 679–80.

**25.** As to the first Rule 11 criterion—a complaint "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"—the trial court ruled:

The court is doubtful the Plaintiff gave this action any serious consideration or devoted any significant work towards disposing of it. The court cannot accept that, after careful deliberation, the Plaintiff believed RSI was the correct Defendant. Plaintiff had no reasonable basis for believing RSI had authority to overturn CAB's decision. RSI was simply the party receiving the benefit of CAB's decision.

If Defendant had followed the Plaintiff's theory, RSI would not have filed a protest with CAB regarding the DPW decision, but instead would have sued Eagle for relief, because Eagle was the party benefiting from the DPW decision. Assuming there was no improper conduct between Eagle and the DPW, suing Eagle just would not make any sense. Similarly, under these circumstances, suing RSI for relief is considerably pointless. It is clear to this court, the Plaintiff failed to conduct the reasonable factual inquiry required by Rule 11.

**26.** The court stated its "improper purpose" finding as follows:

First, in [its] opposition to the Defendant's Motion to Dismiss, the Plaintiff argued RSI was the proper defendant because RSI had the power to withdraw [its] protest. This suggests the action was for the sole vexatious purpose of forcing the Defendant into withdrawing its protest. Second, under normal circumstances, the Plaintiff's position would have been to defend the CAB decision, should Eagle have challenged it. This means, at best, the Plaintiff and the Defendant, if at all, would have arrived before the court on the "same team." Instead, the Plaintiff decided to become involved before her attention was even necessary. It is hard to believe the Plaintiff felt compelled to provide her attention to this matter without having any indication such attention was necessary. The court is simply not convinced the Plaintiff did not have improper motivations for filing this action.

The parties agree that the origin of the "[f]irst" reason for finding a "vexatious" or "improper"

inferable from the facts giving rise to the first finding, *see Simpson v. Chesapeake & Potomac Tel. Co.*, 522 A.2d 880, 885 (D.C. 1987), was not so limited. See *supra* note 26. Thus, we cannot say that the appealable dismissal order virtually determined the result of the Rule 11 liability ruling; in this particular case something more—a purpose element—entered into it.

Furthermore, under Rule 11 the amount of the sanction is a discretionary call based in part on the "severity of the violation" and related "malice or bad faith." *Williams v. Board of Trustees of Mount Jezreel Baptist Church*, 589 A.2d 901, 912 (D.C.1991) (reversing and remanding Rule 11 order, awarding ten percent of defendants' costs and attorney's fees, for fuller explanation of whether Rule 11 sanctions were warranted) (internal quotation marks omitted). Here, dismissal of the lawsuit for the reasons the trial court gave did not necessarily dictate the court's decision to award a full one hundred percent of RSI's (reasonable) costs and attorney's fees as a Rule 11 sanction. That particular amount was attributable to a "vexatious purpose" factor in addition to the grounds used to justify the dismissal order. See *supra* notes 25, 26.[27]

In sum, according to *Swint* and *Gilda Marx, Inc.* analyses: (1) the Rule 11 inquiry need not be resolved in order to decide the underlying merits (dismissal) issue; and (2) the two issues are not otherwise "inextricably intertwined"; resolution of the dismissal issue will not, virtually by itself, permit simultaneous disposition of the Rule 11 liability issue. We therefore must dismiss Francis's appeal No. 95–CV–1063 (Rule 11), as well as RSI's related cross-appeal No. 95–CV–1044, for lack of jurisdiction; they are premature.

We recognize that, if we were to address at this time the liability phase of the trial court's Rule 11 inquiry, we presumably would identify any error so that the likely next appeal of the Rule 11 sanctions, focusing on the specific amounts awarded, theoretically could result in the end of the appellate process (except for the issue of attorney's fees on appeal). By eschewing such review now, there is the risk of a final Rule 11 order later that will have to be returned to the trial court again on the question of liability even if the amounts awarded are reasonable. Virtually inevitably in most cases, however, there would be at least one separate Rule 11 appeal, if only as to specific amount, even if a trial court were to rule on the dismissal and the Rule 11 liability issues together. Thus, there is no reason why there will necessarily be more appeals if Rule 11 "liability" is joined later with Rule 11 "amount" rather than, as in this case, joined earlier with the merits of the underlying defense calling for dismissal; in either case, there is not only the likelihood of a second appeal because of a challenged amount (if not a questioned liability), but also the possibility of a third appeal if this court finds error in any part of the Rule 11 analysis. Generally speaking, therefore, we see no judicial economy in allowing split appeals of Rule 11 issues.

## VIII. Disposition

Appeal No. 95–CV–576 is affirmed; appeal Nos. 95–CV–1044 and 95–CV–1063 are dismissed for lack of jurisdiction.

*So ordered.*

FARRELL, *Associate Judge,* concurring.

I join the court's opinion. On the Rule 11 issue, I do not understand the court to go beyond the Supreme Court's holding in

---

purpose was not Francis's opposition to RSI's motion to dismiss but an alleged oral statement by Francis's counsel to RSI's counsel. The idea plainly was that RSI could grant relief by dropping its protest and, as a result, by permitting Eagle to have the contract, as Francis desired. On remand, the trial court will want to bear in mind that Rule 11 does not apply to oral remarks or to actions of counsel before or during trial. *See Kleiman v. Aetna Cas. & Sur. Co.*, 581 A.2d 1263, 1266 (D.C.1990); *Chevalier v. Moon*, 576 A.2d 722, 723 (D.C.1990).

**27.** Even if the trial court had limited its ruling on Rule 11 liability to the lack of an adequate pre-filing inquiry as to who would be the proper defendant, it is not clear that this court could justify invoking its pendent appellate jurisdiction, since resolution of the underlying merits—whether the complaint should be dismissed for lack of a proper defendant—would not necessarily resolve the *percentage* of costs and attorney's fees the court should award under Rule 11 (without regard to actual amount).

*Swint v. Chambers County Comm'n,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). That is, we do not decide "definitively or preemptively ... *whether* or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." *Id.* at ——, 115 S.Ct. at 1212 (emphasis added). Even assuming such "pendent appellate jurisdiction" were available if "either the appealable or the nonappealable order virtually determine[d] the result of the other," *ante* at 83, that is not the case here, as the court explains. For me it is an open question whether the judicial economy achieved by exercising jurisdiction over a nonappealable order in a given case is worth entertaining arguments in potentially many more cases that orders are "inextricably linked," that review of one decision (nonappealable) is necessary to permit "meaningful" review of another one, or that one order "virtually" determines the result of another.

## ON PETITION FOR REHEARING

In seeking judicial review of a Contract Appeals Board (CAB) order, Ester H. Francis, Director of the Department of Public Works (DPW), sued Recycling Solutions, Inc. (RSI) in the Superior Court to vacate the CAB order. That order had voided DPW's award of a recycling contract to Eagle Maintenance, Inc. and directed DPW to award the contract instead to RSI (if found to be a responsible contractor). After confirming the trial court's jurisdiction and concluding that subsequent events had not made the case moot, we addressed the trial court's two principal rulings: (1) that RSI was not a proper defendant, and (2) that Francis, as Director of DPW, was not a proper plaintiff. (We dismissed Francis's appeal of a trial court ruling under Super.Ct.Civ.R. 11, as well as RSI's cross-appeal of that ruling, for lack of jurisdiction.)

### I.

On petition for rehearing, Francis does not question our rulings that she was not a proper plaintiff, and that the trial court did not err in declining to grant her leave to substitute the proper party (the Director of the Department of Administrative Services) as plaintiff under Super.Ct.Civ.R. 17(a) and 19(a). Nor does Francis challenge our rulings on jurisdiction and Rule 11. The only issue on rehearing, therefore, is our decision that the CAB, not RSI, was the proper defendant.

We reached that conclusion for five reasons: (1) "as a general rule" under District of Columbia law, "an administrative agency itself must carry the burden of defending its action in any challenge to it"; (2) the CAB was "suable as a separate entity," i.e., it was "sui juris"; (3) RSI, as defendant, could not "provide the requested relief" (vacation of the CAB order); (4) RSI had committed no discernible wrong; and (5) RSI was not the only "real" party in interest, since the CAB had "a substantial interest in defending" against a complaint aimed directly at "the CAB's authority" and at "the validity of its decision." *Francis v. Recycling Solutions, Inc.,* 695 A.2d 63, 70–71 (D.C.1997).

In responding to our analysis, Francis discusses five federal cases not previously cited to this court. Francis argues that, because no statute expressly authorizes the CAB—a purely adjudicatory agency—to enforce its orders, that responsibility must be left to the private party that benefits from the CAB order; otherwise, says the petition, "the taxpayers must fund litigation to defend private interests—even against the government—whenever the agency's ruling in favor of a private party is challenged in the courts." The petition, therefore, suggests two related questions: (1) whether the CAB is the proper defendant, and (2) if so, how far the CAB must go in defending its decision on appeal.

### II.

At the outset, we note that, for purposes of deciding who is the proper respondent, there is no apparent, meaningful difference between a "contested case," where the appeal from agency action comes directly to this court, and a noncontested case, where review of agency action is sought, initially, in the

trial court; the scope of such review in this court and in the trial court is the same. *See Barry v. Wilson,* 448 A.2d 244, 246 (D.C. 1982) (per curiam); *Kegley v. District of Columbia,* 440 A.2d 1013, 1018 (D.C.1982). Because the forum as such, therefore, would appear to have nothing to do with who must answer the aggrieved party for the alleged wrong, the court rules and case law governing review of agency action in either context will be relevant here.

Both this court's rules and the Superior Court's rules specify that the party challenging an agency order must name the agency as a "respondent." In this court, the agency is *"the* respondent." D.C.App.R. 15(c), (e) (emphasis added). All other parties, beside the petitioner, are "intervenors." *See* D.C.App.R. 15(f). In the trial court, Super.Ct.Agency Rev.R. 1(d) refers to "respondents," and the caption to the form in the appendix to that rule—prescribed for petitions for review of agency action—provides for listing "respondent(s)." Despite this use of the plural, however, one thing is clear: even if a party other than the agency can be a "respondent" (rather than merely an "intervenor") in a trial court agency review proceeding, the agency itself must be designated a respondent. *See District of Columbia Dep't of Admin. Servs. v. International Bhd. of Police Officers, Local 445,* 680 A.2d 434, 437 (D.C.1996) (hereinafter *IBPO* ); Super.Ct.Agency Rev.R. 1 app. line B ("Address of Respondent Agency or Official"). Similarly, FED.R.APP.P. 15(a) provides that, in the federal courts, "[i]n each case the agency must be named respondent."

While these court rules do not definitively resolve for every case whether an adjudicating agency must be named respondent and carry the burden of defending its orders, we are satisfied that, at least presumptively, the agency has this defense responsibility, and that a petitioner who would name a private party respondent to the exclusion of the agency has the heavy burden of making that case.

With these preliminary observations in mind, we are ready for Francis's arguments based on federal case law. She argues, fundamentally, that the CAB is purely an adjudicatory body, without enforcement functions, and thus is neither equipped nor obligated—any more than a trial court is—to defend its decisions in court. The private party prevailing before the CAB, she says, like the party who wins in the trial court, is the only proper respondent/appellee.

For this proposition Francis first cites *McCord v. Benefits Review Bd.,* 168 U.S.App. D.C. 302, 514 F.2d 198 (1975), in which an employer who lost a worker's compensation case before the Benefits Review Board of the Department of Labor sought review in the court of appeals, joining both the claimant and the Board as respondents. *See id.* at 303, 514 F.2d at 199. The court granted the Board's motion to dismiss the Board from the case on the ground it was not a proper party respondent, despite the language of FED.R.APP.P. 15(a). *See McCord,* 168 U.S.App.D.C. at 304, 514 F.2d at 200. The court held that it had "plenary power" to grant all appropriate relief; that the Board's presence was not required to assure the "adversarial clash" necessary to establish the court's jurisdiction, since both employer and employee were parties; and that the statute itself did not require the Board to be a party. *Id.; accord Parker v. Director, Office of Workers' Compensation Programs,* 75 F.3d 929, 934 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 58, 136 L.Ed.2d 21 (1996).

Two other cases Francis cites turn on detailed analyses of the Occupational Safety and Health Act and on its legislative history indicating that Congress never intended the Occupational Safety and Health Review Commission (OSHRC)—"a purely adjudicative entity"—to serve as a respondent. *Oil, Chemical & Atomic Workers Int'l Union v. Occupational Safety & Health Review Comm'n,* 217 U.S.App.D.C. 137, 146, 671 F.2d 643, 652 (1982) (citing *McCord* ); *accord Marshall v. Sun Petroleum Prods. Co.,* 622 F.2d 1176, 1180–84 (3d Cir.1980).[1] In *Oil,*

1. Other federal circuits have taken a contrary position. *See Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n,* 528 F.2d 645, 648 n. 8 (5th Cir.1976); *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1266–67 (4th Cir.

*Chemical* the petitioner named OSHRC as respondent, and the prevailing private party moved to intervene and to dismiss OSHRC as an improper respondent. Similarly, in *Marshall*, an originally named private respondent moved for dismissal of OSHRC. Both motions were granted. In *Oil, Chemical*, the D.C. Circuit relied not only on legislative history but also, as in *McCord*, on the fact that there was "[s]ufficient adversity ... between the parties at the [OSHRC] proceeding to ensure a proper case or controversy at the appellate level." *Oil, Chemical*, 217 U.S.App.D.C. at 146, 671 F.2d at 652. In *Marshall*, the Third Circuit stressed that another agency—the Secretary of Labor as policymaker—would be the only proper government respondent. *See Marshall*, 622 F.2d at 1183–84; *see also Oil, Chemical*, 217 U.S.App.D.C. at 146 n. 13, 671 F.2d at 652 n. 13.

The other two federal cases Francis cites, from the United States Court of Appeals for the Federal Circuit, concern appeals from different contract appeals board orders. In *United States v. Hamilton Enters., Inc.*, 711 F.2d 1038 (Fed.Cir.1983), the United States Navy, in appealing from the board order, named the prevailing contractor as appellee, but that was not an issue and the court did not discuss it. *See id.* at 1039. In *Boeing Petroleum Servs., Inc. v. Watkins*, 935 F.2d 1260 (Fed.Cir.1991), the contractor-appellant (Boeing) moved "to revise the caption by changing the appellee from the 'United States' to the 'General Services Administrative Board of Contract Appeals.'" *Id.* at 1260. The government replied—and the court acknowledged—that the court had followed "an established, long unchallenged contrary practice of designating the United States respondent in all CDA [Contract Disputes Act] appeals." *Id.* (alteration in original) Internal quotation marks omitted). The court came up with a third solution: naming as respondent the "agency head"—in that case the Secretary of Energy—because the

CDA had designated "the agency head as the party entitled to appeal." *Id.* at 1261. "It follows," said the court, "that the party entitled to appeal is the proper named respondent." *Id.* In presenting this novel analysis the court did not address the question whether a purely adjudicatory agency could, or could not, by its very nature be a proper party respondent.

Recently, the Supreme Court addressed some of the reasoning underlying the foregoing cases in *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, Dep't of Labor*, — U.S. —, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997).[2] In *Ingalls*, a worker's compensation case brought by an employee's widow against her husband's employer, the administrative law judge ruled for the claimant, as did the Benefits Review Board on administrative appeal. *See id.* at — — —, 117 S.Ct. at 799–800. On further appeal to the United States Court of Appeals to the Fifth Circuit, the Director of the Department of Labor's Office of Workers' Compensation Programs sought to participate as a respondent, and the employer moved to strike the Director's brief, arguing lack of standing. Citing its own precedent, the Fifth Circuit sustained the Director's participation and the Supreme Court affirmed. *See id.* at —, — — —, 117 S.Ct. at 800, 804–08. The Court expressly rejected *McCord* and *Parker*; it relied on the express language of FED.R.APP.P. 15(a)— "[i]n each case the agency must be named respondent"—to justify the Director's election to participate. *See Ingalls*, — U.S. at —, 117 S.Ct. at 806. The Court reasoned, quite simply, that Rule 15(a) does not limit naming an agency as respondent to situations where that would be necessary to preserve the adversariness required for a case or controversy. *See id.* at —, 117 S.Ct. at 806.

The Court, however, recognized a separate question: what "agency" should be named as respondent? *See id.* The question answers

---

**2.** *Ingalls* addressed federal law and, like the other federal cases Francis now cites to us, is not binding on this court. *See Francis, supra*, 695

A.2d at 69. We have found examination of federal law useful in the procurement area, however, *see Jones & Artis Constr. Co. v. District of Columbia Contract Appeals Bd.*, 549 A.2d 315, 322 n. 6 (D.C.1988), and we find the analysis in *Ingalls* most helpful here.

itself when the "agency has a unitary structure—*i.e.,* where a single entity wears the hats of adjudicator and litigator/enforcer," since there is only one agency that could be named. *Id.* If, however, there is a "split-function regime" whereby the legislature "places adjudicatory authority outside the agency charged with administering and enforcing the statute," there is a question whether the purely adjudicatory body would be a proper respondent, or whether the enforcement agency alone would have to be named; the Court did not address that situation. *Id.* at ——, 117 S.Ct. at 807. Finally, as in *Ingalls* itself, there are split-function regimes where the adjudicative and enforcement/litigation duties, respectively, have been divided between "two sub-'agencies' . . . under the umbrella of the same overarching agency," in which case the overarching agency—in *Ingalls,* the Secretary of Labor— would be the formal respondent. *Id.* The Secretary then should designate its enforcement/litigation arm (the Office of Workers' Compensation Programs), rather than its adjudicator (the Benefits Review Board), as the "designated litigator once the case reaches the courts of appeals." *Id.*

*Ingalls,* therefore, accepted the reasoning of *Oil, Chemical* and *Marshall* that the policy-enforcement agency under a statute, not the adjudicatory agency, is the proper respondent; but *Ingalls* rejected the notion in *McCord* (cited in *Oil, Chemical*) that FED. R.APP.P. 15(a), requiring that the agency whose order is under review "must be named respondent," can be ignored if the agency's participation is not required to assure adversarial clash. (The Court did not deal with the Federal Circuit's novel rationale in *Boeing Petroleum Services* that an agency authorized to appeal can, simply by virtue of such authority to act as a party, be named a party respondent.)

It is important to note that in none of these case, *Ingalls* included, did the court address what happens when the policy-enforcement agency acts not as respondent but as petitioner—assuming it has standing to do so. In *Boeing Petroleum Services,* for example, if the Secretary of Energy ("agency head") had appealed, who would have been the respondent: the Board of Contract Appeals or the contractor? If the Secretary of Labor had intervened as a petitioner in *Marshall,* might OSHRC have been a proper respondent? We can guess that the judges of those panels would say "no" to making any purely adjudicatory agency a respondent, but there are other federal circuits likely to say "yes," see *supra* note 1, and *Ingalls* does not answer the question. *Ingalls,* however, does stress the importance of each particular statutory scheme, and thus we turn to the one presented to us.

### III.

In the present case, we confront the split-regime identified but not addressed in *Ingalls:* the CAB is purely an adjudicatory body and the Procurement Practices Act enforcement authority is in another agency, the Department of Administrative Services (DAS). Nothing in the Procurement Practices Act expressly authorizes the CAB to enforce its own decisions; to the extent there are enforcement powers under the Act, they are given to DAS.[3]

Under the Act, the CAB initially has jurisdiction over protests of contract awards. *See* D.C.Code § 1–1189.3; *Jones & Artis Constr. Co. v. District of Columbia Contract Appeals Bd.,* 549 A.2d 315, 320 (D.C.1988). Then, either a losing protester or the District government through the DAS Director (with approval of the Corporation Counsel) may seek review of the CAB decision in the proper court. *See* D.C.Code § 1–1189.5; *Fran-*

---

3. We note that very recently the Council of the District of Columbia passed the Procurement Reform Amendment Act of 1996, D.C. Act 11–526, 44 D.C.Reg. 1423 (1997). This Act creates a new "independent service agency to be called the Office of Contracting and Procurement" and transfers DAS's procurement responsibilities to that agency. D.C.Code § 1–1181.5(a) (Supp.

1997). This Act became effective on April 12, 1997; the analysis in this opinion on rehearing is necessarily addressed to the legal regime in effect when we issued our original opinion. We offer no opinion as to the effect, if any, of the recent amendments on the questions addressed today.

cis, supra, 695 A.2d at 72; *Jones & Artis Constr. Co.*, 549 A.2d at 317–18.[4]

When a protester appeals a DAS decision to the CAB, no respondent is named; the pleading is captioned "Protest of," followed by the protester's name and address and the contract number. 36 D.C.Reg. 2690 (1989) (to be codified at 27 DCMR § 107.3). The respondent in reality becomes multiple parties. The first is the "contracting agency," which either files an answer called an "agency report," 36 D.C.Reg. 2712 (to be codified at 27 DCMR § 305), or files a "dispositive motion in lieu of report." 36 D.C.Reg. 2713 (to be codified at 27 DCMR § 306). In addition, all other "interested parties"—namely, "all bidders or offerers who appear to have a substantial and reasonable prospect of receiving an award if the protest is sustained"—potentially become respondents in fact. 36 D.C.Reg. 2712 (to be codified at 27 DCMR § 304.1(b)).

If the "contracting agency" (here DPW) loses before the CAB and wants to appeal, DAS must concur, obtain agreement of the Corporation Counsel, and then step in as the "plaintiff" or "petitioner" representing the government before the Superior Court or this court, as appropriate. *See* D.C.Code § 1–1189.5(b); *Francis, supra,* 695 A.2d 71–73; *Jones & Artis Constr. Co.,* 549 A.2d at 323. There is, however, no statutory provision or regulation stating whether there shall be a government "respondent" in either court and, if so, who that shall be. The only authority we have for a government respondent is the combination of court rules cited earlier specifying that the "agency" that issues the order must be a respondent. *See* D.C.App.R. 15(c), (e); Super.Ct.Agency Rev.R. 1; *see generally Ingalls,* —— U.S. at ——, 117 S.Ct. at 806.

*Ingalls* seems to tell us, however, that regardless of the type of agency regime there is for administering and adjudicating agency business—"unitary" or "split-func-

tion" (two types)—there will be *some* "agency" that is properly designated a "respondent," as required by court rule. *Ingalls,* of course, concerned an enforcement agency's desire to participate, voluntarily, as a second respondent supporting a private party who had prevailed against another private party in a government agency proceeding; *Ingalls* was not a government effort, as in this case, to join the losing party's cause as petitioner *and* to assure that the prevailing private party defended the appeal alone, without help from the government adjudicator. Thus, the Court in *Ingalls* did not have to deal with the question whether an agency *had* to be named a respondent. Nor did *Ingalls* deal with the propriety or necessity of naming a purely adjudicatory agency as respondent when the agency that administers the statute (here DAS)—while having statutory authority to pursue the government's interest by appealing a CAB order as plaintiff or petitioner—has no corresponding statutory authority to defend the CAB's decisions in court. While *Ingalls,* therefore, rejects the *McCord* line of cases and appears to say that the petitioner must honor a court rule designating as respondent the agency that issued the challenged order, it does not come to grips with the types of agencies and fact pattern at issue here—to which we now turn.

## IV.

We know from the design of the Procurement Practices Act and from its implementing regulations that whenever a private party wants to appeal a CAB decision, the only suable agency in the picture at that point is the CAB, since the contracting agency, DPW, is not sui juris. *See Francis, supra,* 695 A.2d at 70–71. It follows that, under court rules, the agency that issued the challenged order—the CAB—is designated a respondent (*the* respondent in this court), and the Corporation Counsel represents the

---

**4.** Although D.C.Code § 1–1189.5(a) provides only for "contractor" appeals of CAB decisions, this court in *Jones & Artis Constr. Co.* left open the possibility of a losing "protester's" seeking judicial review of a CAB decision in Superior Court—an issue not before us here since the government has brought this appeal. *See Jones*

*& Artis Constr. Co.,* 549 A.2d at 318 (citing *Capitol Hill Restoration Society, Inc. v. Moore,* 410 A.2d 184, 188 (D.C.1979) (noting that party aggrieved by agency action in noncontested case may initiate appropriate equitable action in Superior Court to seek redress)).

District government in defense of the CAB order.[5] Under normal circumstances, therefore, Eagle Maintenance would have appealed to Superior Court the CAB order favoring RSI, naming the CAB as respondent, with RSI typically filing—if at all—as intervenor. (Or perhaps Eagle Maintenance would have named both the CAB and RSI as respondents. *See* Super.Ct.Civ.Agency Rev.R. 1(d).)

But suppose DAS, not Francis (for DPW), had brought this appeal to Superior Court supporting Eagle Maintenance over RSI: would no District government entity be authorized to defend the CAB order? There is a legislative gap here. The Procurement Practice Act is not like the Comprehensive Merit Personnel Act, where the Public Employee Relations Board (PERB) not only adjudicates disputes involving public employees subject to collective bargaining agreements, *see* D.C.Code § 1–605.2 (1992 Repl. & Supp. 1997), but also has authority to seek enforcement of its orders in Superior Court, *see id.* § 1–618.13(b) (1992 Repl.), represented by its own counsel, *see id.* § 1–605.2(14) (1997 Supp.) (granting PERB authority to "[r]etain independent legal counsel ... to assist in Board activities when the District government is a party to the Board's proceedings"). Thus, the Procurement Practices Act does not expressly cover a situation where the government is on both sides as, for example, in *IBPO,* where DAS sought judicial review of a PERB order that DAS "cease and desist from refusing to bargain in good faith," and PERB was the proper respondent represented by its own counsel. *IBPO,* 680 A.2d at 435 (internal quotation marks omitted).

At least with respect to bid protest litigation where there are winning and losing private parties, it is not clear why DAS would ever take sides *and* assume responsibility for bringing the appeal once the CAB had ruled.[6]

One would think the losing private party would take that initiative, if any is taken. But, assuming that DAS (*not* DPW) can offer good reason for doing so, it is not clear why that decision to favor the CAB loser over the winner should mean that the CAB winner is left to fend for itself as the lone designated "respondent," in contrast with the usual case where the winner would have the benefit of the government's defending the CAB decision.

The statutory gap in representation reflects a situation not discussed in *Ingalls:* a split-function regime where the "adjudicator and litigator/enforcer" agencies not only are entirely separate from one another but also are antagonists. Let us continue to suppose that DAS, rather than Francis (for DPW), had sought judicial review of the CAB order. Absent statutory authority to do so, *see* D.C.Code § 1–1189.5(b), DAS would have had to demonstrate how it was aggrieved, in order to have standing to challenge the CAB decision. *See Director, Office of Workers' Compensation Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.,* 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995) (holding that Director of Workers' Compensation Programs in Department of Labor was not "person adversely affected or aggrieved" under federal workers' compensation statute and thus lacked standing to challenge decision of Department of Labor Benefits Review Board). But, given DAS's statutory standing to bring the appeal in our hypothetical case, we do not have the possibility of considering whether the enforcement agency (DAS) or the adjudicatory agency (CAB) is the preferred government respondent, for only the latter is even available.

At one level—a purely normative level—we could simply conclude that *Ingalls,* in rejecting *McCord,* would have us honor court

---

**5.** Before the CAB, where the contracting agency, e.g., DPW, is a respondent in fact, the Corporation Counsel represents that agency and, in doing so, is said to be representing "the District." 36 D.C.Reg. 2689 (to be codified at 27 DCMR § 106.1).

**6.** In this case, of course, the Director of DPW, not DAS, challenged the CAB order—without

authority to do so. Implicitly, DAS was on the side of the respondent CAB's order. Thus, any discussion of the proper respondent arguably is unnecessary since we decided that Francis lacked authority to initiate this lawsuit. *See Francis, supra,* 695 A.2d at 71–75. Designation of the proper respondent is relevant, however, to the Rule 11 issue still before the trial court.

rules that require designation of an agency as respondent, and thus have DAS, as plaintiff petitioner, name the CAB as respondent since DAS is on the other side. After all, *Ingalls*—in focusing on *what* agency (as between two) is the proper respondent—never suggests that *no* agency need be named, and *Ingalls* expressly rejected *McCord's* premise that, in a private-party dispute before a government adjudicatory agency, a government respondent need not be named on appeal when adversariness is otherwise attainable.

On the other hand, the Court in *Ingalls* appears to assume that an enforcement agency, not a purely adjudicatory body, will be available for the respondent's role, and the Court expressly questions whether a purely adjudicatory agency has any "more interest or stake in defending its orders in the courts of appeals then does a district court." *Ingalls,* —— U.S. at ——, 117 S.Ct. at 807.

If we go below a normative analysis based solely on court rules to the realities, the focus is not on the "CAB" as adjudicator/litigator but on the "government" as defender of one of its agency's orders when another government agency attacks that order. Thus, in the absence of a statutory direction, the issue really becomes one of fairness and resources: if the enforcement agency (DAS) disputes its obligation to carry out orders of the adjudicatory agency (CAB), does this mean that the winning party before the CAB must defend the CAB order alone, or must the government also assume responsibility for defending the CAB at government expense?

As we understand the petition for rehearing, the concern is not so much that the CAB is an improper respondent; in Francis's petition, the government says "there would probably be no great harm if … the CAB were merely a nominal party." The District's real concern is money. The government insists that RSI, as the party with dollars and cents at stake, should defend the CAB order for its own benefit rather than having the cost of defense assessed against the taxpayers when the taxpayers already are subsidizing the government plaintiff (DAS) in exercising statutory authority to prosecute an appeal in the public interest. In other words, the government sees the matter as essentially a dispute between private parties, with the government's having a right—and responsibility—to take sides for the benefit of the public. From this perspective, therefore, there is no reason for the government—in a gratuitous, self-contradictory action not authorized by statute—to supply resources for representation of the side in the dispute the government opposes.

The government's position would mean—and here is the real significance of the petition—that every time the District government, through DAS, properly seeks review in Superior Court of a CAB order on a bid protest (or seeks direct review in this court by appealing a CAB order in a contested case), the CAB would be named a respondent pursuant to court rules; but, the private party who prevailed before the CAB, not the CAB itself, would be responsible—either as co-respondent or intervenor—for defending the order in its favor. The prevailing party, then, would have the choice either of simply relying, passively, on the agency record and decision, or of taking charge of advocating the agency position on appeal.[7] After further consideration, we essentially agree with this government position (a revision of its original posture before this division of the court).

In the first place, it is important for the CAB to be named respondent even though the CAB is purely an adjudicatory agency. We have shown that court rules require this. As *Ingalls* says, without guidance from the governing statute itself it is appropriate to rely on court rules that specify who the responding party shall be—in this case the agency that issued the order under appeal. *See Ingalls,* —— U.S. at ——–——, 117 S.Ct. at 805–06.[8] Furthermore, while it is

---

7. In cases where DAS does not appeal the CAB order, the Corporation Counsel presumably would stand ready to defend the CAB order as being consistent with DAS views.

8. Given the carefully negotiated division of responsibility under the Procurement Practice Act between the Mayor (policy) and DAS (enforcement), we see no room for an argument that the Mayor is an "overarching agency" that should serve as the respondent. That argument could

true, as *Ingalls* notes, that a purely adjudicatory agency like the CAB does not have the kind of stake in the outcome of the litigation that an enforcement agency responsible for implementing government policy has, *see Ingalls*, —— U.S. at ——, 117 S.Ct. at 807, an adjudicator does retain an institutional interest in having its order defended and enforced, not ignored. Finally, although the reviewing court could nullify a CAB order indirectly by declaring it void and ruling that a private party respondent was not entitled to take advantage of the order, it is preferable, as the court rules themselves imply, for the reviewing court to direct its order to the agency itself as a litigation party—especially because there can be instances where the court orders modifications that the agency should not have to receive from a private party as courier or from a second-hand notice sent by the court as a courtesy copy of an order directed to someone else.

The next question is, if the CAB—a purely adjudicatory agency—must be named as respondent, does this preclude naming the private party who prevailed before the CAB as a co-respondent when the enforcement agency under the Procurement Practices Act (DAS) decides the public interest lies in its challenging the CAB order?

As noted earlier, Super.Ct.Agency Rev.R. 1(d) refers to "respondents"—as does the caption in the appendix to that rule prescribing the form to be used in filing the petition for review in the trial court. In this court, however, D.C.App.R. 15(c) and D.C.App.R. 15(e) clearly refer to the agency—every

agency—whose order is appealed as "the respondent," in the singular, leaving the winning parties before the agency to file, if at all, as "intervenors." D.C.App.R. 15(f). Bearing in mind that our only real concern in this case is who shall represent, and foot the bill for, the interests of the party who prevailed before the CAB, we see no need to decide whether DAS can name a CAB winner as co-respondent in a Superior Court agency review proceeding, or must leave it to that private party to intervene if it wants to participate; the question whether the government must defend the CAB ruling more than nominally will not depend on whether the prevailing private litigant is a "respondent" or an "intervenor." There may be implications of "respondent," rather than "intervenor," status that are beyond the scope of this discussion, *see, e.g., Dankman v. District of Columbia Bd. of Elections & Ethics*, 443 A.2d 507 (D.C.1981) (en banc) (discussing differences), and we do not want to prejudice a future analysis of the issue by opining on it unnecessarily here. Hereafter in this opinion, therefore, we shall assume for convenience that the prevailing party before the CAB will participate as an intervenor, or participate not at all. We do so without prejudice to an argument in some other case that a losing agency party who petitions the trial court for review can properly name the winning private party a "co-respondent," rather than designating only the agency as respondent and leaving it to the private party to participate, if at all, by intervention.[9]

---

put the Mayor in a position of attempting to overrule the enforcement sub-agency, DAS, when the statute clearly intends to assign enforcement exclusively to DAS. Furthermore, even if the Mayor were bound to embrace DAS for this purpose, that would mean in this case that there still is no enforcement agency available to defend the CAB order.

**9.** A plaintiff's option to name the prevailing party before the CAB as co-respondent, when the CAB itself is named lead respondent, is not necessarily foreclosed by our ruling in *IBPO*. There, we reversed dismissal of a proceeding where DAS erroneously had named the police officers' union, which had prevailed before PERB, as the respondent rather than naming PERB. We concluded that, because PERB had been named in the petition, and served with process, as the agency which had issued the challenged order—

and not only had sought to intervene but also had filed a responsive brief—PERB effectively had been named, and acted as, respondent. *See IBPO*, 680 A.2d at 438. In *IBPO*, PERB—an enforcement not merely an adjudicatory, agency—was unquestionably the proper respondent. We therefore concluded that IBPO could withdraw from the proceeding and seek its costs, although we noted that IBPO had "not argued that it definitely would have declined to intervene if it had not been named, incorrectly, as respondent." *Id.* We did not consider whether PERB and IBPO could have been named jointly as respondents. Furthermore, because PERB is an enforcement agency, with its own statutory, independent counsel, there was no basis for arguing that the party, like IBPO, that prevailed in the PERB proceeding had to assume sole responsibility for defending the order in its favor.

On the assumption that the CAB is before the court as "respondent," while the private prevailing party is an "intervenor" in support of the CAB order, we turn to the final question: how far must the CAB go in defending its order on appeal?

Although the CAB does have an institutional interest in the outcome, that interest is surely less than the financial stake the prevailing party has in that outcome. Moreover, the fact is, beyond naming the CAB as a party for purposes of implementing, modifying, or reversing its decision, there is no reason, in order to achieve fairness to the parties or adversariness in the proceeding, for the government to supply independent counsel for the CAB when DAS and the government's own litigation resources are on the other side. The private parties—the winner and the loser before DAS, and then before the CAB—presumably began, and then continued, with their own counsel; there is no reason to assume that they will not employ counsel to continue the battle through the final, court proceeding.[10]

From this perspective, government counsel usually has a nominal or supplementary role; the lead typically is taken by private counsel. The fact that DAS, through Corporation Counsel, may take the lead (as in this case, if DPW were not the plaintiff) not only is unusual but also provides no reason for the government to foot the bill for a lawyer on the other side as well, since there is no reason to suppose that the prevailing party's counsel would step aside, in the last stage of the proceeding, simply because the government waded in for the appealing party. In fact, one would expect the opposite; the prevailing party's interest in the CAB order undoubtedly will be represented.

 In our original ruling that the CAB must be named as respondent in this case, we did not say that the government necessar-

ily must spend taxpayer resources in defense of that order, duplicating the efforts of a prevailing private party who elects to intervene. We often see the Corporation Counsel adopting an intervenor's brief when the government purports to defend an agency order. Thus, even if the government were required (it is not) to provide a defense of the CAB when DAS takes the Corporation Counsel to the other side, the result, presumably, would be nominal representation out of deference to private counsel of the prevailing party, who typically is paid to be doubly sure the CAB order is well defended. In the absence of a statutory requirement, therefore, we perceive no need to force the government to finance representation on both sides of a dispute over a CAB order, since both sides typically are represented by private counsel.

Accordingly, the Corporation Counsel—perceived as representing either DAS or, more broadly, the District government—is free to assert the government's interest on either side. It can decide to support the private intervenor, in favor of the CAB order, and negotiate with the intervenor's representative as to how the litigation load shall be shared. Or it can side with the plaintiff and use the Corporation Counsel's resources to join forces with plaintiff's counsel, as agreed between them, in opposing the CAB order.

 In sum, we reaffirm that even a purely adjudicatory agency—in this case the CAB—must be named respondent for Superior Court review of the agency's order. DAS, through the Corporation Counsel, may side with either private party—the CAB winner or loser—based on DAS's view of the public interest. If it sides with the plaintiff, and the CAB winner for some reason chooses not to defend, the reviewing court will have to rely on the CAB ruling itself in evaluating the prevailing party's position. We would

---

10. The Procurement Practice Act, unlike federal law applicable to contract disputes, does not provide attorney's fees for a prevailing private party as an incentive to undertake the defense (or prosecution) of an appeal from a CAB ruling. *See J.M.T. Mach. Co. v. United States,* 826 F.2d 1042, 1046–47 (Fed.Cir.1987) (discussing how 1985 amendments to the Equal Access to Justice Act, 5 U.S.C. § 504 (1994) authorize attorney's

fee for prevailing party in contract dispute case brought pursuant to Contract Dispute Act, 41 U.S.C. § 607 (1994)); *see also Southwest Marine, Inc. ex rel. Universal Painting & Sandblasting Corp. v. United States,* 43 F.3d 420, 421 (9th Cir.1994) (confirming that federal Equal Access to Justice Act, 5 U.S.C. § 504, authorizes attorney's fee award to prevailing party in administrative proceeding).

expect in such a case, however, for the pre-
vailing private party to intervene, and to
continue to rely on its own counsel without
government assistance.

* * *

For the reasons expressed in this opinion,
the petition for rehearing is granted and Part
IV. of the division opinion of January 30,
1997, is clarified accordingly.

*So ordered.*